**CITY OF BONHAM, Appellant,**

v.

**SOUTHWEST SANITATION, INC., Appellee.**

No. 06–93–00067–CV.

Court of Appeals of Texas, Texarkana.

Jan. 5, 1994.

Rehearing Overruled Feb. 8, 1994.

Ronald H. Clark, Wolfe, Clark & Henderson, Sherman, for appellant.

David C. Turner, Jr., Bonham, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Southwest Sanitation, Inc. recovered judgment against the City of Bonham for damages for breach of a waste handling contract. The City appeals, contending, among other things, that there is legally insufficient evidence to establish that the contract as claimed by Southwest was ever adopted. The City also contends that, if there was a contract as described by Southwest, it was void because it contravened TEX. CONST. art. XI, § 5. We sustain these points of error and will reverse and render a take-nothing judgment.

Southwest provided waste disposal services for the City from 1983 to 1988. The contract provided that Southwest would be paid $6.00 per month for each residential pickup. It also provided that Southwest would collect $1.50 per cubic yard of trash delivered by city nonresidents to the City's landfill for burial and that it would be entitled to $.90 per cubic yard for that service, making Southwest's total compensation under that contract $6.90. There was no addendum or attachment to the contract except an exhibit showing the City's regulations for trash packaging.

Southwest operated under the 1983 contract until it expired. The City solicited bids from several contractors for a new waste disposal contract to cover the next two years, from April 1, 1988 to March 31, 1990. Southwest and four other companies submitted bids. Although Southwest was not the low bidder, the city council accepted its bid and a

contract was signed. Southwest contended that the contract, which provided for $6.90 to be paid Southwest for its services, actually had an "Addendum" attached to it that provided for an additional payment of $2.00 per cubic yard of trash delivered to the landfill by city nonresidents, making a total compensation for Southwest of $8.90. The City contended that the contract its council approved contained no such addendum, but rather tied Southwest's compensation to its bid that the City accepted, which was for a total of $6.90. The jury found that the City agreed to the additional $2.00 per cubic yard charge, and judgment was therefore rendered for Southwest for $84,215.07, representing deficiency in payment alleged by Southwest for most of the contract's two-year term plus interest and attorney's fees.

We agree that there is legally insufficient evidence to support the jury's finding that the City agreed to pay Southwest the additional $2.00 per cubic yard.

■ A city or county may contract only upon express authorization of the city council or commissioners court by vote of that body reflected in the minutes. *Hill Farm, Inc. v. Hill County*, 425 S.W.2d 414 (Tex.1968); *City of Bryan v. Page*, 51 Tex. 532 (1879); *Corpus Christi v. Bayfront Associates*, 814 S.W.2d 98 (Tex.App.—Corpus Christi 1991, writ denied); *Stirman v. City of Tyler*, 443 S.W.2d 354 (Tex.Civ.App.—Tyler 1969, writ ref'd n.r.e.); *First Nat'l Bank of Marlin v. Dupuy*, 133 S.W.2d 238 (Tex.Civ.App.—Waco 1939, writ dism'd judgm't cor.); 52 Tex. Jur.3d *Municipalities* § 360, at 426–27 (1987). Statements or acts of the mayor or other officers or governing body members are ineffectual. *Canales v. Laughlin*, 147 Tex. 169, 214 S.W.2d 451 (1948); *Alamo Carriage v. City of San Antonio*, 768 S.W.2d 937 (Tex.App.—San Antonio 1989, no writ). Persons or entities contracting with the governmental unit are charged by law with notice of the limits of their authority and are bound at their peril to ascertain if the contemplated contract is properly authorized. *State v. Ragland Clinic–Hospital*, 138 Tex. 393, 159 S.W.2d 105, 107 (1942). And proof of the governing body's acts may only be supplied by the authenticated minutes of the meeting at which the action occurred, unless the minutes have been lost or destroyed. *Wagner v. Porter*, 56 S.W. 560 (Tex.Civ.App.1900); 52 Tex.Jur.3d *Municipalities* § 360, at 427. A plaintiff suing to establish a contract with a city has the burden to both plead and prove that the minutes show the council's act in authorizing or ratifying the contract. *Wagner v. Porter*, 56 S.W. at 561.

Despite the rule that the minutes are the only competent evidence of the city's action, *Wagner v. Porter, supra*, Southwest's manager, Gary Barolet, testified without objection that his bid for the new contract contained an "Addendum" for the additional $2.00 per cubic yard and that the contract actually signed by him and the mayor contained the Addendum. To the contrary, however, the city secretary, a former commissioner, and the mayor all testified that the City voted to accept only Southwest's "Alternate One" bid, which was for a total compensation of $6.90, and that the contract actually signed by the parties and found in the City's vault contained no "Addendum" as Southwest contended was attached to the contract.

The above testimony notwithstanding, the minutes of the council meetings are in evidence. They contain an exhibit showing what bids were considered. Each bidder submitted bids on one or more of four "Alternates." The minutes reflect that:

> Bid tabulations for the four alternate bid specifications for the solid waste contract were presented. (SEE EXHIBIT "A" AT-TACHED). B and B Equipment Company of Paris submitted the low bid. A lengthy discussion took place before a motion was made by McDonald to accept the bid of $4.85 per month of B and B Equipment Company for Alternate One. More discussion followed without a second to the motion. A motion was made by Gibson and seconded by Ford to *remain with Southwest Sanitation and accept their bid.* More discussion followed before the vote was taken. The motion passed with all present voting in favor with the exception of Commissioner McDonald who was opposed.

(Emphasis added.) Exhibit A to the minutes shows Southwest's bid on Alternate One,

which was the alternate accepted by the council, as $6.90. Southwest's bid for Alternate Two was $4.50, for Alternate Three $8.25, and for Alternate Four $9,300.00 per month plus $2.00 per cubic yard. There is no testimony or evidence that the city council voted for or accepted a bid of more than $6.90 or for any addendum providing an additional $2.00 per cubic yard.[1]

From the foregoing it can be seen that, even if the contract signed by Southwest and the mayor had the "Addendum" attached to it providing for an additional $2.00 per cubic yard, the undisputed and only competent evidence shows that the action of the city council was only to accept the bid calling for a total of $6.90. The other contract, even if signed by the mayor, was unauthorized. Thus, the evidence is legally insufficient to support the jury's finding.

If the City had in fact agreed to pay Southwest the additional $2.00 per cubic yard but the required formalities of the agreement were not shown, and if the agreement would in other respects have been legal, Southwest might have been able to enforce an implied contract or recover in *quantum meruit* if the City had accepted its services and the benefits of such an arrangement. *See Sluder v. City of San Antonio,* 2 S.W.2d 841 (Tex. Comm'n App.1928, judgm't adopted); *Panhandle Constr. Co. v. City of Spearman,* 89 S.W.2d 1053 (Tex.Civ.App.—Amarillo 1935, no writ). Southwest, however, did not seek to recover on an implied contract or in *quantum meruit,* but sued only on an express contract. It cannot now claim an implied contract or *quantum meruit. B.L. Nelson & Associates v. City of Argyle,* 535 S.W.2d 906, 910 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.).

We further conclude that, if the City and Southwest made a contract whereby the City would owe Southwest an additional $2.00 per cubic yard over the $6.90 agreed on in the first contract, it would be void because it would contravene TEX. CONST. art. XI, § 5, which provides:

[N]o debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent. thereon.

*See also* TEX. CONST. art. XI, § 7.

As our Supreme Court stated nearly a hundred years ago in *McNeill v. City of Waco,* 89 Tex. 83, 33 S.W. 322 (1895), the quoted provision of the constitution prohibits any city from incurring a debt for any purpose or in any manner without *at the same time* making the required provision for funds to pay the same. Any attempted creation of a debt without also making such provision for payment is contrary to the express provision of the constitution and void; and it is "wholly immaterial whether the consideration or 'purpose' of the transaction be properly classed as an item of ordinary or current expense, or otherwise, and whether the 'debt' be evidenced by an ordinary ... contract, a note, or a bond." *McNeill v. City of Waco,* 33 S.W. at 323.

We must, then, determine if the contract asserted by Southwest, even if it existed, constituted a debt within the meaning of the constitutional provision. "Debt" as used in Section 5 means any pecuniary obligation imposed by contract, except such as will, at the date of the contract, within the lawful and reasonable contemplation of the parties, be satisfied out of current revenues for the year, or out of some fund then within the immediate control of the city. *McNeill v. City of Waco, supra.* A contract that runs for more than a year but gives the city a right to terminate it at the end of each year is a commitment of current revenues only and is not a debt. *McNeill v. City of Waco, supra.* The alleged contract here, however, is for a two-year period and has no right of termination at the end of each budget period.

---

1. Southwest argues that its bid on Alternate Four was accepted by the council, but the undisputed evidence shows that only Alternate One was accepted. Indeed, the contract Southwest sued upon and contends was accepted and signed by it and the mayor is plainly marked "Alternate One." Moreover, Southwest's bid on Alternate Four contained a $9,300.00 per month charge in addition to the $2.00 per cubic yard charge. Nowhere has Southwest contended that they were entitled to the $9,300.00, as it would have been if its Alternate Four had been accepted.

It therefore is a debt within the meaning of Section 5 unless it comes within the exception noted in *McNeill v. City of Waco.*

 A party seeking to establish that its contract is not within the constitution's prohibition must both allege and prove that, at the date of making the contract, the entire obligation could reasonably be paid from the current year's revenues, or that there was at that time a fund on hand or in the immediate control of the city for the specific purpose of paying the obligation plus interest. Otherwise, the contract is void and no recovery can be had on it. *McNeill v. City of Waco, supra; City–County Solid Waste v. Capital City,* 813 S.W.2d 705 (Tex.App.—Austin 1991, writ denied); *Brodhead v. City of Forney,* 538 S.W.2d 873 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.); *Harris County v. Dowlearn,* 489 S.W.2d 140 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.). Southwest neither pleaded nor proved any such fact.

Southwest contended that the City could have and should have increased the fee for nonresidents' use of the landfill to $2.50 per cubic yard and then it would have had sufficient revenues to pay its alleged contract. Such an action, however, would not have satisfied the constitutional requirement unless it was lawfully in force and dedicated *at the time* the alleged contract with Southwest was negotiated.

Because of our disposition of the foregoing points of error, it is not necessary that we address the City's remaining points of error. For the reasons stated, the judgment of the trial court is reversed and judgment is here rendered that Southwest take nothing.

BLEIL, Justice, concurring.

I decline to join in holding that the evidence is legally insufficient to establish that the contract was adopted. However, because I agree with the decision insofar as it rests on state constitutional grounds, I concur with the court's decision.

GRANT, Justice, concurring.

I decline to join in holding that the contract is void on constitutional grounds. However, because I agree with the decision insofar as it rests on legally insufficient grounds, I concur with the court's decision.