TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00297-CV






Little-Tex Insulation Company, Inc., Appellant



v.



General Services Commission, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 95-02530, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING






 Appellant Little-Tex Insulation Company, Inc. ("Little-Tex") sued appellee General
Services Commission of the State of Texas ("Commission") seeking damages for breach of
contract and for a violation of the "takings clause" of the Texas Constitution; the suit also
requested judicial review of the Commission's decision to terminate the parties' contract. The
Commission filed a plea to the jurisdiction asserting sovereign immunity as to the breach-of-contract and takings claims and filed special exceptions to the request for judicial review. The
trial court sustained the special exceptions, granted the plea to the jurisdiction, and dismissed the
suit. We will affirm in part and reverse and remand in part.


FACTUAL AND PROCEDURAL BACKGROUND



 We determine the trial court's jurisdiction from the good-faith factual allegations
made by the plaintiff. See Brannon v. Pacific Employers Ins. Co., 224 S.W.2d 466, 469 (Tex.
1949); Flowers v. Lavaca County Appraisal Dist., 766 S.W.2d 825, 827 (Tex. App.--Corpus
Christi 1989, writ denied). Unless the defendant pleads and proves that such allegations were
fraudulently made to confer jurisdiction, they are accepted as true. See Flowers, 766 S.W.2d at
827; Delk v. City of Dallas, 560 S.W.2d 519, 520 (Tex. Civ. App.--Texarkana 1977, no writ);
Gordon v. Carver, 409 S.W.2d 878, 879 (Tex. Civ. App.--Amarillo 1966, no writ); see also
Continental Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 449 (Tex. 1996). Because the
Commission has not asserted any such fraudulent pleading here, we accept Little-Tex's allegations
as true; our recitation of the facts is taken from Little-Tex's pleadings.

 The Commission awarded Little-Tex a contract for the abatement of asbestos
material on two floors of a state office building. The contract provided for payment of $140,170
for each floor, for a total of $280,340. During the abatement process, Little-Tex submitted
payment invoices to the Commission; payment was remitted to Little-Tex for approximately
$77,000 in satisfaction of the first invoice. After payment of the first invoice, a dispute arose
between the parties concerning Little-Tex's performance, and the Commission refused to remit
any further payment until Little-Tex addressed the Commission's concerns. The Commission
eventually terminated the contract based on its contention that Little-Tex failed to correct certain
contract violations previously the subject of a cure notice. At the time of the contract cancellation,
Little-Tex had completed approximately 30% of the abatement on one of the two floors.

 Little-Tex initially filed suit seeking damages for breach of contract and also
requesting judicial review under the Administrative Procedure Act (1) ("APA") of the Commission's
decision to terminate the contract. The Commission responded with special exceptions contesting
the request for judicial review based on the absence of any statute conferring jurisdiction on the
court. The trial court sustained the Commission's special exceptions but granted Little-Tex an
opportunity to amend its pleadings to properly state a cause of action for judicial review. (2) Little-Tex filed an amended petition that omitted the request for judicial review, reasserted its breach
of contract claims, and added a cause of action for a takings clause violation. The Commission
filed a plea to the jurisdiction based on sovereign immunity. The trial court granted the plea and
dismissed Little-Tex's suit in its entirety. In this appeal, Little-Tex challenges the trial court's
decision to sustain the special exceptions and grant the plea to the jurisdiction.


DISCUSSION



Request for Judicial Review

 In its first issue, Little-Tex asserts that the trial court erred in sustaining the
Commission's special exceptions regarding Little-Tex's APA claim because another part of the
Texas Government Code authorizes judicial review of the Commission's decisions under
contested-case procedures set out in the APA. We decline to address this issue. After the trial
court sustained the Commission's special exceptions, Little-Tex filed an amended petition that
omitted the cause of action for judicial review under the APA. Under settled law, "when a
plaintiff fails to include in his amended petition a cause of action that he had included in a
previously filed petition, that cause of action . . . is no longer before the trial court." State v.
Tamminga, 928 S.W.2d 737, 740 (Tex. App.--Waco 1996, no writ). Such an omission "acts as
a voluntary dismissal of that cause of action." Id. Because no cause of action for judicial review
under the APA was before the trial court when the court ordered the cause dismissed, this issue
is moot. We therefore dismiss Little-Tex's first issue.


Takings Claim

 The takings clause of the Texas Constitution states that "[n]o person's property shall
be taken, damaged or destroyed for or applied to public use without adequate compensation being
made, unless by the consent of such person." Tex. Const. art. I, § 17. In the court below, Little-Tex sought monetary damages based on an alleged violation of the takings provision, arguing that
the Commission "took" its labor and materials for the benefit of the public without just
compensation. The trial court dismissed the takings claim pursuant to the Commission's plea to
the jurisdiction asserting immunity from suit. Little-Tex contends the trial court erred in
dismissing the claim because sovereign immunity does not preclude a cause of action for violation
of the takings clause.

 We agree that an action for compensation under the takings clause is a limited
exception to the doctrine of sovereign immunity. See Firemen's Ins. v. Board of Regents of Univ.
of Texas Sys., 909 S.W.2d 540, 543 (Tex. App.--Austin 1995, writ denied); Green Int'l, Inc. v.
State, 877 S.W.2d 428, 433 (Tex. App.--Austin 1994, writ dism'd by agr.). The State waives
sovereign immunity both as to suit and as to liability when, pursuant to its constitutional authority,
it takes, damages, or destroys property for public use. See Green Int'l, 877 S.W.2d at 433. A
plaintiff must allege a proper takings claim, however, in order to invoke this waiver of sovereign
immunity.

 To establish a takings claim, the plaintiff is required to plead and prove that (1) the
State intentionally performed certain acts; (2) that resulted in a "taking" of property; (3) for public
use. See Fireman's, 909 S.W.2d at 543; Green Int'l, 877 S.W.2d at 434. In Green International,
we held that the contractor had not properly established a takings claim against the State because
(1) there was no intent to take, and (2) the contractor consented to the taking. Id.

 Little-Tex concedes that in Green International, this Court held that factual
allegations nearly identical to those contained in Little-Tex's petition failed to state a proper
takings claim. See Green Int'l, 877 S.W.2d at 434-36. Nevertheless, Little-Tex asks us to reverse
the holding in Green International as being "contrary to established taking jurisprudence and the
facts." We decline to do so.

 Addressing the requirement that the State must have intended to take property for
public use, this Court stated in Green International:


[W]henever the government acts within a color of right to take or withhold
property in a contractual situation, the government cannot be said to have effected
a taking because there was no intent to take, only an intent to act within the scope
of the contract. Even if the government were to withhold property or payment it
believed to be due the other party, the government would still be acting within the
color of right to the extent it had a good faith belief that its actions were justified
due to disagreements over payment due or performance under the contract.



877 S.W.2d at 434 (citations omitted).

 In the present case, Little-Tex has not alleged that the State acted with specific
intent to take its property for public use. Instead, Little-Tex's pleadings contain allegations
affirmatively establishing a dispute between the parties over the ability of Little-Tex to perform
the contract. Little-Tex claims the contract violations alleged by the Commission either never
occurred or were quickly corrected. This contention actually bolsters the fact that the parties were
engaged in a bona fide dispute over Little-Tex's performance under the contract. In addition, the
pleadings reveal that the Commission paid a substantial sum to Little-Tex as it became due,
discontinuing payment only after the dispute between the parties arose. Again, this bolsters the
conclusion that the Commission had no intent to take Little-Tex's labor and material for public
use. See Green Int'l, 877 S.W.2d at 435. The factual allegations by Little-Tex affirmatively
demonstrate that the Commission was acting within its color of right in attempting to exercise its
rights under the contract and therefore had no intent to "take" property for public use.

 Moreover, the factual allegations in Little-Tex's pleadings show that it voluntarily
entered into the contract with the State, voluntarily performed under that contract, and voluntarily
gave possession of labor and materials to the State; thus, Little-Tex cannot argue that it did not
consent to the Commission's possession. See id.; State v. Steck Co., 236 S.W.2d 866, 869 (Tex.
Civ. App.--Austin 1951, writ ref'd) (entity that entered into contract with State, produced
product, and delivered product to State did not have valid taking claim). In Green International,
this Court found that when a party "voluntarily enters into a contract and delivers a product to the
state pursuant to that contract, the entity thereby consents to the state's possession of the product." 
877 S.W.2d at 435. Applying this same logic to the present case, Little-Tex's pleadings
affirmatively establish that it consented to the Commission's possession of its labor and materials.

 Nonetheless, Little-Tex argues that it could not have consented to the Commission's
possession of its labor and materials because it had no power to withhold consent to the
Commission's exercise of dominion over improvements it made on public property. In other
words, because Little-Tex was unable to restrict the Commission from using the state-owned
building where the asbestos abatement occurred, there was no voluntary delivery of possession to
the State. We are not convinced that legal or contractual disincentives to withholding its services
means Little-Tex did not consent to the State's possession of its materials and labor. Green
International also involved labor expended on and materials delivered to state property. Like the
contractor there, Little-Tex voluntarily entered a contract it knew required performing services
on state property, and it chose to perform those services. Having so "delivered" services and
materials to state property, it effectively consented to the State's possession of the benefits
therefrom.

 Accordingly, we conclude that Little-Tex's own pleadings affirmatively establish
that (1) the Commission did not have the requisite intent to take Little-Tex's property for public
use under its eminent domain or other constitutional powers, and (2) Little-Tex consented to the
Commission's possession of materials and the benefits of its services under the contract. We hold
that the trial court did not err in dismissing Little-Tex's takings claim as barred by sovereign
immunity.


Breach-of-Contract Claim


 It has long been recognized that sovereign immunity protects the State from lawsuits
for damages, absent legislative consent to sue the State. See, e.g., Federal Sign v. Texas S. Univ.,
951 S.W.2d 401, 405 (Tex. 1997). The term "sovereign immunity" actually includes two
principles: immunity from suit and immunity from liability. Id. Immunity from suit bars a suit
against the State, even if the State acknowledges liability to the asserted claim, unless the
legislature has given consent to sue. Id. Immunity from liability provides that even if the
legislature has given consent to sue, the State may not be adjudged liable for the claim asserted. 
Id. When the State enters into a contract with a private entity, it gives up its immunity from
liability, but not its immunity from suit. Id.

 Federal Sign involved a contract with Texas Southern University ("TSU") whereby
Federal Sign was to construct and deliver basketball scoreboards to TSU. Federal Sign began
constructing the scoreboards; before they were delivered, however, TSU indicated it had decided
to secure the scoreboards from another source. Federal Sign sued for breach of contract, asserting
damages for lost profits and expenses. The supreme court held that a suit for breach of contract
could not be maintained because TSU had not, by contracting with a private entity, waived its
immunity from suit.

 In reaching its decision, the majority opinion in Federal Sign occasionally employed
broad language, arguably supporting an interpretation that the State maintains its immunity from
suit in all cases arising from breach of contract, without exception. The court went on to explain,
however, that its decision was limited to the particular facts presented:


We hasten to observe that neither this case nor the ones on which it relies should
be read too broadly. We do not attempt to decide this issue in any other
circumstances other than the one before us today. There may be other
circumstances where the State may waive its immunity by conduct other than
simply executing a contract so that it is not always immune from suit when it
contracts.



Id. at 408 n.1. Moreover, four of the six justices who joined the majority also joined a concurring
opinion emphasizing that "the Court's opinion is limited, despite some occasional broad
language." Id. at 412 (Hecht, J., concurring). Thus, this Court has recently interpreted Federal
Sign to mean that "only the legislature can generally pronounce that the mere act of signing a
contract abrogates the State's immunity from suit, but an entity of the State may waive its
immunity with regard to a particular contract if warranted by its conduct." See Aer-Aerotron, Inc.
v. Texas Dept. of Transp., 997 S.W.2d 687, 691 (Tex. App.--Austin 1999, no pet. h.).

 Since the Federal Sign decision, two other courts of appeals have addressed the
State's immunity from suit in breach of contract cases; the holdings of both courts are consistent
with our narrow interpretation of Federal Sign. See Texas S. Univ. v. Araserve Campus Dining
Servs., Inc., 981 S.W.2d 929, 932 (Tex. App.--Houston [1st Dist.] 1998, pet. denied)
(interpreting Federal Sign for limited proposition that merely executing contract does not waive
immunity from suit); Alamo Community College Dist. v. Obayashi Corp., 980 S.W.2d 745, 749
(Tex. App.--San Antonio 1998, pet. denied) (stating Federal Sign holds no more than State's mere
execution of contract does not waive immunity from suit).

 Accordingly, we hold that, in the instant case, the Commission did not waive its
immunity from suit simply by contracting with Little-Tex. This does not end our inquiry,
however. It bears repeating that the majority opinion in Federal Sign specifically directs that
"[t]here may be other circumstances where the State may waive its immunity by conduct other
than simply executing a contract so that it is not always immune from suit when it contracts." 951
S.W.2d at 408 n.1. Thus, our task is to confront the issue left unresolved by the supreme court
in Federal Sign: Did the State (here, the Commission) engage in conduct, beyond the mere
execution of the contract, that waived its immunity from suit?

 In its brief in this appeal, Little-Tex argues that the Commission waived immunity
from suit by "accepting" Little-Tex's labor and materials. (3) In the trial court, Little-Tex pleaded,
in general terms, that it conferred a benefit on the Commission and that the Commission accepted
that benefit. Although these pleadings did not specify what goods or services were accepted, the
State did not object or except to the petition on that basis.

 Waiver is the intentional relinquishment of a known right or the engaging in
intentional conduct inconsistent with claiming that right. Tenneco Inc. v. Enterprise Prods. Co.,
925 S.W.2d 640, 643 (Tex. 1996). We believe receipt and acceptance by the State of a benefit
from a contracting party is wholly inconsistent with the State's using its immunity from suit to
shield itself from a legal obligation to pay for the value of the benefit. Indeed, such a scenario
arguably produces a manifest injustice that cannot in good conscience be tolerated.

 The logical nexus between acceptance of benefits and waiver of immunity is
supported by case law addressing the State's exemption from the application of estoppel, a legal
doctrine closely related to waiver. The general rule is that when a unit of government is
exercising its governmental powers, it is not subject to estoppel. See City of Hutchins v. Prasifka,
450 S.W.2d 829, 835 (Tex. 1970); City of San Angelo v. Deutsch, 91 S.W.2d 308, 309-10 (Tex.
1936). This rule is a corollary to the doctrine of sovereign immunity. See Dillard v. Austin
Indep. Sch. Dist., 806 S.W.2d 589, 594 (Tex. App.--Austin 1991, writ denied).

 The courts of this state, however, have long recognized an exception to the no-estoppel rule where a governmental unit has accepted benefits:


 The opinion is expressed in a number of decisions that a city may be
estopped even when it is acting in its public capacity if it has received or accepted
benefit from the transaction. In such case exception is properly made to the general
rule which has been discussed, because there is added to the equities existing in
favor of the individual on account of his reliance and injury the established and
compelling equitable principle that the city may not, after having accepted benefit
from the unauthorized act, repudiate it so far as it imposes an obligation upon it or
is disadvantageous to it.


Deutsch, 91 S.W.2d at 311-12 (citations omitted); accord Mahler v. City of Seabrook, 538 S.W.2d
870, 872 (Tex. Civ. App.--Houston [14th Dist.] 1976, no writ); Pitzer v. City of Abilene, 323
S.W.2d 623, 626 (Tex. Civ. App.--Eastland 1959, no writ); Newton v. Town of Highland Park,
282 S.W.2d 266, 275 (Tex. Civ. App.--Dallas 1955, writ ref'd n.r.e.); cf. Glasscock v. Permian
Oil Co., 185 S.W.2d 740, 743 (Tex. Civ. App.--El Paso 1944, writ ref'd w.o.m.) (State estopped
to challenge basis of judgment after accepting benefits thereof).

 We conclude, therefore, that under the circumstances of the present case the State's
acceptance of a benefit from Little-Tex's performance pursuant to the contract constitutes conduct
that waives the State's immunity from suit. (4)

 We recognize that the waiver of sovereign immunity raises complex and competing
policy issues that the legislature is often best suited to resolve. This Court does not, by our
present holding, in any way grant consent to sue the State. Instead, we merely address one
circumstance in which we believe the State's conduct effectuates a waiver of immunity from suit: 
the acceptance of goods or services tendered pursuant to a contract and the refusal to pay for the
accepted goods or services. (5)


CONCLUSION



 We hold that the trial court did not err in sustaining the Commission's special
exceptions and dismissing Little-Tex's request for judicial review of the Commission's decision
to terminate the contract between the parties. We further hold the trial court did not err in
granting the Commission's plea to the jurisdiction and dismissing Little-Tex's takings claim. We
hold, however, that the trial court erred by dismissing Little-Tex's breach-of-contract claim for 

lack of jurisdiction; we reverse the trial court's dismissal of Little-Tex's breach-of-contract claim,
and we sever and remand that portion of the cause to the trial court for further proceedings.[6]



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith, and Yeakel

Affirmed in Part; Reversed and Remanded in Part

Filed: July 29, 1999

Publish


 


 [6] We are mindful of HB 826, which was enacted by the recently adjourned 76th Legislature,
signed by the Governor, and will be effective August 30, 1999. See Act of May 30, 1999, 76th
Leg., R.S., ch. 1352, § 9, 1999 Tex. Gen. Laws 4583-87. That Act, which adds Chapter 2260
to the Texas Government Code, establishes procedures for the resolution of certain contract claims
against the State. The procedures include mandatory negotiations between the State and the
claimant, with the option for a contested case hearing before an administrative law judge of the
State Office of Administrative Hearings if the claim is not resolved informally. We do not believe
the Act affects the present case, however.


 First, we note that the Act applies only to "a claim pending or arising on or after the
effective date of this Act," and that the Act does not apply to "a claim or dispute with respect to
which the . . . legislature has . . . [granted] permission to the contractor to bring a suit against the
state . . . ." See Act of May 30, 1999, 76th Leg., R.S., ch. 1352 , §§ 12(a), 13, 1999 Tex. Gen.
Laws 4587. We believe these provisions indicate a legislative intent that the Act not interfere with
matters already in litigation, but rather that it apply to disputes that are still reasonably subject to
the procedures set forth in the Act. We do not think the statutory procedures could reasonably be
imposed in the present context.



























 


 In addition, section 2260.005 of the Act provides: "The procedures contained in this
chapter are exclusive and required prerequisites to suit in accordance with Chapter 107, Civil
Practice and Remedies Code." See Act of May 30, 1999, 76th Leg., R.S., ch. 1352, sec. 9,
§ 2260.005, 1999 Tex. Gen. Laws 4584 . The Commission argues that this provision makes the
new procedures in Chapter 2260 a prerequisite to any suit against the State. We do not think the
meaning of this section is so clear. The terms of the foregoing provision suggest that the statutory
procedures apply only to a suit filed in accordance with Chapter 107 of the Texas Civil Practice
and Remedies Code. That chapter, however, relates only to obtaining permission from the
legislature to sue the State. See Tex. Civ. Prac. & Rem. Code Ann. §§ 107.001-.005 (West
1997). As we held in Aer-Aerotron, we interpret the supreme court's opinion in Federal Sign to
mean that, as to a particular contract, the State may waive its immunity from suit by its conduct. 
See Aer-Aerotron, 997 S.W.2d at 691. In such a case, legislative permission to sue the State is
not necessary. If the procedures established by HB 826 are a prerequisite only to seeking
legislative permission to sue, such procedures could not logically be a prerequisite to sue in
circumstances where legislative permission is not necessary. For these reasons, we hold that HB
826 does not control this appeal.
1. Tex. Gov't Code Ann. §§ 2001.001-.902 (West 1999).
2. Little-Tex also asserted violations of the due process and equal protection clauses of the
federal and state constitutions. The trial court sustained the Commission's special exceptions as
to these claims as well. Little-Tex does not contest the trial court's dismissal of its constitutional
claims in this appeal.
3. Little-Tex argues in the alternative that sovereign immunity is not jurisdictional, but rather
is an affirmative defense. Little-Tex fails to recognize the distinction between immunity from
liability, which is not a jurisdictional issue, and immunity from suit, which is. See Southwest
Airlines Co. v. Texas High-Speed Rail Auth., 867 S.W.2d 154, 158 n.6 (Tex. App.--Austin 1994,
writ denied).
4. We do not attempt today to determine every possible method by which the State may
"accept" goods or services. We note, however, that Title 2 of the Uniform Commercial Code,
dealing with the sale of goods, may be instructive on this question in future cases. See Tex. Bus.
& Com. Code Ann. §§ 2.603, .606, .608 (West 1994) (dealing with acceptance, rejection, and
revocation of acceptance of goods).
5. We do not intend by our discussion to imply that this is the only possible conduct that can
result in a waiver of immunity from suit. We simply do not address any other actions not
implicated by the facts presented in this appeal that may amount to a waiver.



ote that the Act applies only to "a claim pending or arising on or after the
effective date of this Act," and that the Act does not apply to "a claim or dispute with respect to
which the . . . legislature has . . . [granted] permission to the contractor to bring a suit against the
state . . . ." See Act of May 30, 1999, 76th Leg., R.S., ch. 1352 , §§ 12(a), 13, 1999 Tex. Gen.
Laws 4587. We believe these provisions indicate a legislative intent that the Act not interfere with
matters already in litigation, but rather that it apply to disputes that are still reasonably subject to
the procedures set forth in the Act. We do not think the statutory procedures could reasonably be
imposed in the present context.



























 


 In addition, section 2260.005 of the Act provides: "The procedures contained in this
chapter are exclusive and required prerequisites to suit in accordance with Chapter 107, Civil
Practice and Remedies Code." See Act of May 30, 1999, 76th Leg., R.S., ch. 1352, sec. 9,
§ 2260.005, 1999 Tex. Gen. Laws 4584 . The Commission argues that this provision makes the
new procedures in Chapter 2260 a prerequisite to any suit against the State. We do not think the
meaning of this section is so clear. The terms of the foregoing provision suggest that the statutory
procedures apply only to a suit filed in accordance with Chapter 107 of the Texas Civil Practice
and Remedies Code. That chapter, however, relates only to obtaining permission from the
legislature to sue the State. See Tex. Civ. Prac. & Rem. Code Ann. §§ 107.001-.005 (West
1997). As we held in Aer-Aerotron, we interpret the supreme court's opinion in Federal Sign to
mean that, as to a particular contract, the State may waive its immunity from suit by its conduct. 
See Aer-Aerotron, 997 S.W.2d at 691. In such a case, legislative permission to sue the State is
not necessary. If the procedures established by HB 826 are a prerequisite only to seeking
legislative permission to sue, such procedures could not logically be a prerequisite to sue in
circumstances where legislative permission