**SOUTHERN DISPOSAL, INC., Appellant,**

v.

**CITY OF BLOSSOM, Appellee.**

No. 06–04–00123–CV.

Court of Appeals of Texas, Texarkana.

Submitted March 23, 2005.

Decided June 9, 2005.

David C. Turner Jr., Jana Turner, Turner & Turner, LLP, Bonham, for appellant.

James C. Tidwell, Wolfe, Clark, et al, Sherman, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

City of Blossom Administrator, Tony Chance, thought the deadline to give notice of nonrenewal of the City's contract with Southern Disposal, Inc. (SDI) for solid waste disposal was January 18, 2001. If Chance was wrong, and the notice mailed to SDI that day was late, the City risked being subject to an unwanted contract for an additional five-year period. This case

arose from that decision, and largely turns on it.

■ The City sought summary judgment asserting that governmental immunity barred an SDI recovery, that for a number of reasons it was not bound to a contract, and that the Chance notice of nonrenewal was timely. SDI filed its own partial motion for summary judgment, claiming the converse. From the trial court's general summary judgment[1] for the City, SDI appeals. We affirm that judgment because—although (1) governmental immunity does not bar this suit, and (2) there is at least a fact issue about whether a contract bound the City—(3) the Chance notice of nonrenewal was timely.

## 1. Governmental Immunity Does Not Bar this Suit

■ It is well established in Texas that sovereign or governmental immunity

1. On appeal of a trial court's disposition of competing summary judgment motions, the proper disposition is for the appellate court to render judgment for the party whose motion should have been granted. *Members Mut. Ins. Co. v. Hermann Hosp.*, 664 S.W.2d 325, 328 (Tex.1984); *McLemore v. Pac. Southwest Bank, FSB*, 872 S.W.2d 286, 289 (Tex.App.-Texarkana 1994, writ dism'd by agr.). Each party must clearly prove its right to judgment as a matter of law, and neither party may prevail simply because the other party failed to make such proof. *Bd. of Adjustment of City of Dallas v. Patel*, 887 S.W.2d 90 (Tex.App.-Texarkana 1994, writ denied); *James v. Hitchcock Indep. Sch. Dist.*, 742 S.W.2d 701 (Tex.App.-Houston [1st Dist.] 1987, writ denied). The proper disposition on appeal is for the appellate court to render judgment for the party whose motion should have been granted. *McLemore*, 872 S.W.2d at 289.

To prevail on a motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). Summary judgment for a defendant is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). Conversely, a plaintiff can bar a defendant's entitlement to summary judgment by responding with evidence that creates a fact question on at least one element of each affirmative defense advanced by the defendant. *Poncar v. City of Mission*, 797 S.W.2d 236, 239 (Tex.App.-Corpus Christi 1990, no writ).

Thus, once the movant establishes that it is entitled to summary judgment, the burden shifts to the nonmovant to show why summary judgment should not be granted. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989). In reviewing a summary judgment, we accept all the nonmovant's proof as true and indulge every reasonable inference in the nonmovant's favor. *Sci. Spectrum, Inc.*, 941 S.W.2d at 911. All doubts about the existence of a genuine issue of a material fact must be resolved against the movant. *Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex.1996).

A no-evidence summary judgment is essentially a pretrial directed verdict. We therefore apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wal–Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex.2002). We must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Id.; Woodruff v. Wright*, 51 S.W.3d 727 (Tex.App.-Texarkana 2001, pet. denied). We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70–71 (Tex.App.—Austin 1998). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711.

protects the State, its agencies, and its officials from lawsuits for damages, absent the Legislature's consent through statute or legislative resolution. *Tex. Natural Res. Conservation Comm'n v. It–Davy*, 74 S.W.3d 849, 853–54 (Tex.2002); *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997); *City of Texarkana v. Cities of New Boston, et al.*, 141 S.W.3d 778, 781 (Tex. App.-Texarkana 2004, no pet.). The City is a governmental unit and thus is protected from suit by governmental immunity, unless waived. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(A)(B) (Vernon 2005). Governmental immunity encompasses both immunity from liability and immunity from suit. *It–Davy*, 74 S.W.3d at 853.

■■ Immunity from *liability* protects the State from judgments even if the Legislature has expressly given consent to the suit. *Fed. Sign*, 951 S.W.2d at 405. But when the State contracts, the State waives immunity from liability. *Id.* Here, there is at least a fact issue that the City entered into a contract with SDI for solid waste disposal. Hence, there is also at least a fact question on whether the City waived its immunity from liability.

■ Immunity from *suit* bars a suit against the State unless the State expressly consents to the suit. *City of Texarkana*, 141 S.W.3d at 785. SDI argues, in two ways, that the City has waived its immunity.

■ First, SDI contends the City waived its immunity from suit by accepting benefits under the contract. In *Federal Sign*, the Texas Supreme Court held that, by entering into a contract, the State does not waive its immunity from suit. *See Fed. Sign*, 951 S.W.2d at 408. In a footnote, however, the court stated there may be circumstances "where the State may waive its immunity by conduct other than simply executing a contract...." *See id.* at n. 1. Afterward, several courts of appeals concluded that, by conduct including accepting benefits under a contract for goods or services, the State waives its immunity from a breach of contract suit.[2] But the Texas Supreme Court, in *It–Davy*, declined to fashion a waiver-by-conduct exception to sovereign immunity[3] and reaffirmed that it is the Legislature's sole province to waive or abrogate sovereign immunity. *See It–Davy*, 74 S.W.3d at 857. We are constrained by the Texas Supreme Court's ruling in *It–Davy*; thus, we reject SDI's argument that we should fashion such a waiver-by-conduct exception in a breach of contract suit against the City.

■ Second, SDI contends the City has waived its governmental immunity from suit by express consent. At all salient times, the City was either a Type A or a Type B municipality. Both Type A and Type B municipalities are empowered to "sue and be sued"[4] and "plead and be

---

**2.** *See DalMac Constr. Co. v. Tex. A & M Univ.*, 35 S.W.3d 654, 657 (Tex.App.-Austin 1999), *rev'd*, 39 S.W.3d 591 (Tex.2001); *Aer–Aerotron, Inc. v. Tex. Dep't of Transp.*, 997 S.W.2d 687, 692 (Tex.App.-Austin 1999), *rev'd*, 39 S.W.3d 220 (Tex.2001); *Little–Tex Insulation Co. v. Gen. Servs. Comm'n*, 997 S.W.2d 358, 364–65 (Tex.App.-Austin 1999), *rev'd*, 39 S.W.3d 591 (Tex.2001); *Tex. S. Univ. v. Araserve Campus Dining Servs. of Tex., Inc.*, 981 S.W.2d 929, 935 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *Alamo Cmty. Coll. Dist. v. Obayashi Corp.*, 980 S.W.2d 745, 750 (Tex. App.-San Antonio 1998, pet. denied).

**3.** The court reasoned that creating a waiver-by-conduct exception would force the State to expend its resources to litigate the waiver-by-conduct issue before enjoying sovereign immunity's protections, thus defeating many of the doctrine's underlying policies.

**4.** The phrase "sue and be sued ... is quite plain and gives general consent" to be sued in Texas courts. *Mo. Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970). The words "sue and be sued" provide a general waiver of governmental immunity from suit. *See United Water Servs., Inc. v. City of Houston*, 137 S.W.3d 747, 751–

impleaded." Tex. Loc. Gov't Code Ann. §§ 51.013, 51.033 (Vernon 1999). Hence, consistent with *City of Texarkana*, we hold that the Texas Local Government Code effectively waives the City's immunity from suit,[5] requiring it to defend the contract causes of action asserted by SDI. *See City of Texarkana*, 141 S.W.3d at 786–89.

Hence, the City is not entitled to summary judgment based on governmental immunity.

## 2. There Is at Least a Fact Issue About Whether a Contract Bound the City

The City contends the 1996 contract does not bind the City, for a number of reasons. It asserts (A) the council did not enter into competitive bidding; (B) the minutes of the city council meeting do not show the contract was ever considered or authorized by the council; (C) the contract, by its terms, is between SDI and a nonexistent "Blossom Public Works Authority," not the City; (D) the contract improperly creates a public debt without contemporaneously providing for its payment; and (E) the contract improperly provides public funds for private benefit. We address those claims in turn.

### (A) Lack of Competitive Bidding Was Not Conclusively Established

■ The City claims the competitive bidding required[6] to support a valid contract was not established by SDI in the summary judgment proof. The record reveals at least some efforts to satisfy the competitive bidding requirements. Before the March 19, 1996, decision to select SDI's proposal, the city council at its regular meeting of January 2, 1996, tabled its decision on trash pickup until "all written contracts are in hand." That suggests the City was considering competing bids or proposals, a suggestion which is strengthened by the fact that, at the special meeting of March 19, at least three hopeful waste disposal companies had representatives present. There is at least some evidence suggesting competitive bidding was pursued. The lack thereof was not conclusively established by the City.

### (B) Fact Question Exists Concerning City Council's Approval of Contract

■ The City also argues the invalidity of the contract on the basis that the city council minutes do not show council consideration or approval of the SDI contract. We believe there was at least some evidence the contract was approved.

■ True, a city or county may contract only on express authorization by vote of the governing body reflected in the minutes. *City of Bonham v. Southwest Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex. App.-Texarkana 1994, writ denied). The proof of the governing body's acts may be supplied only by the authenticated minutes of the meeting at which the action occurred, unless the minutes have been lost or destroyed. *Id.* A plaintiff suing to establish a contract with a city has the bur-

---

55 (Tex.App.-Houston [1st Dist.] 2004, pet. filed). The phrase "sue and be sued" met the legislative permission requirement. *Fed. Sign,* 951 S.W.2d at 408.

5. The City argues that the fundamental reason immunity exists is to shield "governmental entities from being bound by the policy decisions of their predecessors." *See It–Davy,* 74 S.W.3d at 854. The *It–Davy* court further states, however—and the City overlooks this— that "legislative control over waiving immuni-

ty from suit does not mean that the State can freely breach contracts with private parties, or that the State can use sovereign immunity as a shield to avoid paying for benefits the State accepts under a contract." *Id.* Therefore, an aggrieved party may seek redress by asking the Legislature to waive immunity from suit or take advantage of the immunity waived by the Legislature. *Id.*

6. *See* Tex. Loc. Gov't Code Ann. § 252.021 (Vernon Supp.2004–2005).

den to both plead and prove that the minutes show the council's act in authorizing or ratifying the contract. *Id.* Persons or entities are charged by law with notice of the limits of governmental officers' authority and are bound at their peril to ascertain if the contemplated contract is properly authorized. *Id.*

Minutes of council meetings are in evidence. A regular council meeting held January 2, 1996, reflects the city council tabled its decision on trash pickup until "all written contracts are in hand." A special council meeting was called for Tuesday, March 19, 1996, to decide on the City's solid waste disposal provider. The minutes of that meeting are cryptic:

> Mr. Bangs made motion to go with Southern Disposal, Inc.'s proposal on trash pick-up with the curbside in bags at $7.25 per resident with the $0.25 going to City for billing. Second by Mr. Westbrook. Passed 3 yea, 1 nay.

While the minutes for the March 19 meeting have no details on the terms of the written contract with SDI, the January 2 minutes suggest the proposed contract document may have been obtained by the City. In fact, a document appearing to be SDI's proposal, which includes a form of contract and which contract form also includes the automatic renewal and notice of nonrenewal provisions, appears in the summary judgment evidence of both parties. And that form contract, as proposed by SDI, seems to have been executed. The purported contract, therefore, may have been part of SDI's "proposal" approved by the city council as reflected in the minutes. At least, there is a fact question about whether the city council approved the contract.

*(C) Intent to Contract With Nonexistent Entity Was Not Conclusively Proven*

■■■■ The City also argues the contract's invalidity based on the fact that the contract, by its terms, is between SDI and a nonexistent "Blossom Public Works Authority," not the City. While no party suggests such an entity exists, it appears from the record that the intent of the parties was to have the City involved. "Written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions, by perusing the entire document and to this end, words, names, and phrases obviously intended may be supplied." *Ussery Inv. v. Canon & Carpenter, Inc.,* 663 S.W.2d 591, 593 (Tex.App.-Houston [1st Dist.] 1983, pet. dism'd). The minutes reflect that the City sought to award a contract for solid waste disposal, and the only indication that a nonexistent entity was to be involved is the contract itself. We conclude the City was not entitled to summary judgment on this basis.

*(D) Invalid Public Debt Without Payment Provision Was Not Conclusively Proven*

■■■■ The City also argues the contract improperly created a public debt without contemporaneously providing the means to pay it, within the Texas Constitution. *See* TEX. CONST. art. XI, § 7. In part, the City's argument is based on SDI's effort to obtain payment, assuming the contract renewed after March 19, 2001, without services rendered for such payment. True, the City cannot validly incur "a debt for any purpose without at the same time making the required provision for funds to pay the same." *See City of Bonham,* 871 S.W.2d at 768. But the City has not demonstrated to us from the summary judgment proof, and we do not find conclusively proven, that this contract violated that prohibition. The City was not entitled to summary judgment on this basis.

*(E) Improper Provision of Public Funds for Private Benefit Was Not Conclusively Proven*

■ Finally, the City argues the contract's invalidity because it, in effect, gives public funds to private interests. Its argument is that the twenty-five-cent allowance for each billing, set up in 1996, is woefully inadequate now, given current postage rates, even without considering the other costs involved in billing and collecting accounts for waste disposal services. The city council was authorized to conclude in 1996 that handling waste disposal in the manner set out in the contract was in the public interest. So long as its decision on that matter of legitimate public interest is not fraudulent, arbitrary, or capricious, the contract is not invalid on this basis. *See Barrington v. Cokinos,* 161 Tex. 136, 146, 338 S.W.2d 133, 143 (1960); *State v. City of Austin,* 160 Tex. 348, 356, 331 S.W.2d 737, 743 (1960). Because the contract's invalidity on that basis has not been conclusively proven here, the City was not entitled to its summary judgment on that basis.

### 3. The Chance Notice of Nonrenewal Was Timely

■ The parties agree that the contract requires a party which seeks to stop the contract's automatic renewal must give notice of nonrenewal not less than sixty days before the expiration of the initial five-year term. They simply disagree on how to determine that deadline. According to SDI's logic, the initial five-year term of the contract began March 19, 1996, and would end March 18, 2001; thus, the contract would require notice of nonrenewal by January 17, 2001. The City reasons that the five-year term was to end March 19, 2001, and that sixty days before that expiration was January 18, 2001, the day its notice of nonrenewal was sent. Thus, asserts the City, the contractual require-

ments are met and the contract did not automatically renew. We agree with the City's analysis.

The relevant portion of the contract states:

The contract shall be for a five (5) year period *beginning upon the execution of the contract and ending five (5) years thereafter.* The initial five (5) year term of this contract shall automatically be extended for successive additional five (5) year terms, unless either party *notifies* the other party in writing, *not less than sixty (60) days* and not more than ninety (90) days *prior to the expiration of the initial five (5) year term* or of any successive five (5) year term of its intentions to terminate this contract. Any *such written notice shall be serviced* [sic] *by certified or registered mail,* return receipt requested. In the event *such written notice is given,* this Agreement expires on said anniversary date, provided the Agreement has been in effect for the minimum five year period.

(Emphasis added.) The contract was signed and would have become effective sometime shortly after 7:10 p.m. on March 19, 1996.[7] According to the terms of the contract, its initial five-year term ends five years after the contract's execution. Thus, the initial term ended sometime after 7:10 p.m., March 19, 2001. The sixtieth day before March 19, 2001, is January 18, which would therefore be the last day to give an effective notice of nonrenewal.

The agreement prescribes only two relevant requirements to avoid automatic renewal of the contract: (1) one party must "notify" the other in writing not less than sixty (60) days before the expiration of the initial five-year term of the contract, and (2) any such written notice shall be "ser-

7. The contract bears the date of March 19, 1996. The special meeting of the city council at which the decision was made to "go with"

SDI began at 7:00 p.m. and was adjourned at 7:10 p.m. Therefore, it would appear likely the contract was signed shortly thereafter.

viced [sic] by certified or registered mail, return receipt requested." The City mailed a notice of nonrenewal January 18, 2001,[8] by certified mail, return receipt requested. The City met the two requirements set by the contract terms.

While the contract fails to state clearly when notice will be considered to have been given, it certainly makes neither a requirement that the notice be received by SDI, nor any mention of receipt at all, just that the City "notify" SDI by the deadline. In fact, the contract language suggests an intent that the notice be effective when properly mailed. The critical question is when the City "notified" SDI of its intent not to renew, and the contract's answer is found in its language that the "notice shall be serviced [sic] by ... mail" and that if "such written notice is given," the contract will not renew. Without contrary contract definition or language, this formulation suggests notice is given when properly mailed.

■ Confirming our contract language analysis, it is generally held that, when a contract requires only that one party "notify" the other, and the matter is not defined in the contract, notice occurs at the time a notice is mailed. *See Brown v. Swift–Eckrich, Inc.,* 787 S.W.2d 599, 600–01 (Tex. App.-El Paso 1990, writ denied); *Home Benefit Ass'n v. Jordan,* 191 S.W. 725, 728 (Tex.Civ.App.-Beaumont 1916, writ dism'd w.o.j.); *Charles B. Smith & Co. v. Duncan,* 167 S.W. 233, 235 (Tex.Civ.App.-Austin 1914), *aff'd on other grounds,* 209 S.W. 140 (Tex.1919).

■ The dispute in this case could occur because of the way SDI chose to draft the contract. Where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible

for the language used. *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 737 (Tex.1990); *Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109 (Tex. 1978). If SDI had intended to require receipt of the notice of nonrenewal by a particular deadline, it could have drafted the contract to read that way. By choosing to use only "notify" in the contract, SDI specified a notice be sent, not received, by the deadline. SDI failed to produce any evidence of probative force to raise a fact issue on this point. Therefore, as a matter of law, the City timely notified SDI of nonrenewal of the contract and the contract did not renew. The City's summary judgment is valid on this basis.

*Conclusion*

The City waived its immunity from liability when it contracted with SDI. The Legislature through Sections 51.033 and 51.013 of the Texas Local Government Code effectively waived the City's immunity from suit, requiring it to defend the contract causes of action asserted by SDI. There is at least a fact issue about whether the contract bound the City. The Chance notice of nonrenewal sent via certified mail, return receipt requested, on January 18, 2001, was timely; thus, the contract ended without automatically renewing. Summary judgment for the City was proper.

We affirm the trial court's judgment.

---

8. It is worth noting that the notice was mailed at 3:29 p.m., January 18, 2001, according to the United States Postal Service receipt attached to the City's file copy of the letter.