**TEXAS NATURAL RESOURCE CON-SERVATION COMMISSION, Appellant,**

v.

**IT–DAVY, Appellee.**

No. 03–98–00653–CV.

Court of Appeals of Texas, Austin.

Aug. 26, 1999.

Rehearing Overruled Sept. 23, 1999.

John Cornyn, Attorney General, Charles B. McDonald, Assistant Attorney General, Austin, for Appellant.

Bob E. Shannon, Baker & Botts, Austin, for Appellee.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

MACK KIDD, Justice.

Appellee IT–Davy sued appellant Texas Natural Resource Conservation Commission (the "Commission") for claims arising out of a contract for the clean-up of a hazardous waste site. The Commission brings this interlocutory appeal of the trial court's order denying its plea to the jurisdiction,[1] asserting that the trial court erred in failing to dismiss the cause for lack of jurisdiction on the basis of sovereign immunity. We will affirm the order of the trial court.

## BACKGROUND

■ We determine the trial court's jurisdiction from the good-faith factual allegations made in appellee's pleadings. *See Brannon v. Pacific Employers Ins. Co.,* 148 Tex. 289, 224 S.W.2d 466, 469 (1949); *Texas Parks & Wildlife Dep't v. Callaway,* 971 S.W.2d 145, 147 (Tex.App.—Austin 1998, no pet.). Therefore, our recitation of the facts comes from IT–Davy's amended petition. Moreover, the Commission has stipulated to this version of the facts for purposes of its plea to the jurisdiction.

In 1990, the Commission sought bids from contractors for the clean-up of the Sikes Disposal Pits (the "Sikes site") in Harris County. The Sikes site had been used as a dumping area for unsegregated chemical wastes from area petrochemical companies in the late 1960s and early 1970s. As a result, the soil and groundwater on the site were contaminated to the extent that the United States Environmental Protection Agency ("EPA") placed the Sikes site on the National Priorities List under the Superfund program of the Comprehensive Environmental Response, Compensation and Liability Act. *See* 42 U.S.C.A. §§ 9601–9626 (West 1991). EPA and the Commission agreed on a plan to remediate the Sikes site. EPA would fund up to 90% of the costs and the Commission would administer the clean-up, including the hiring of contractors to perform the clean-up.

The Commission issued an Invitation for Bids (the "Invitation") seeking contractor bids for the remediation of the Sikes site. The project involved the excavation and incineration of contaminated soils, sediments, and other wastes, as well as the treatment of contaminated surface water and groundwater. The Commission envisioned a two-phase clean-up operation: Phase A, involving the construction of the incineration facility necessary for the remediation of the waste; and Phase B, involving the Trial Burn of the incineration facility and the subsequent incineration of the waste. The Invitation included detailed reports containing information regarding the contamination level of the soil and the groundwater. The Invitation further provided that bidding contractors could rely on the accuracy of the technical data found in the reports.

IT–Davy submitted a bid that was accepted by the Commission in March 1990. IT–Davy and the Commission entered into the Contract for Phase B Remediation Services—Sikes Disposal Pits Remedial Action (the "Contract") on July 27, 1990. The Contract provided in relevant part:

If [the Commission] finds that conditions materially differ and will cause an increase or decrease in the CONTRACTOR'S cost or the time required to perform any part of the work under this Agreement, whether or not changed as a result of such conditions, the [Commission] shall make an equitable adjustment and modify this Agreement in writing.

\* \* \* \* \*

If any change under this article causes an increase or decrease in the CONTRACTOR'S cost or time required to perform any part of the work under this Agreement, whether or not changed by any order, the [Commis-

---

1. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(5) (West 1997).

sion] shall make an equitable adjustment.... In the case of defective specifications for which the [Commission] is responsible, the equitable adjustment shall include any increased cost the CONTRACTOR reasonably incurred in attempting to comply with those defective specifications.

\* \* \* \* \*

Except as may be otherwise provided in this Agreement, all claims, counterclaims, disputes, and other matters in question between [the Commission] and the CONTRACTOR arising out of or relating to this Agreement or the breach thereof will be decided by arbitration if the parties mutually agree to arbitration or otherwise in a court of competent jurisdiction in the City of Austin, Travis County, Texas.

IT–Davy began the remediation of the Sikes site in October 1990. During the clean-up, IT–Davy encountered conditions at the site that differed materially from the conditions it expected based upon the data provided by the Commission in the Invitation, and which conditions IT–Davy relied upon in structuring its bid. IT–Davy continued work on the Sikes site, but began a dialogue with the Commission over cost overruns due to the materially different conditions encountered at the site. After completion of the work, IT–Davy sought equitable adjustments from the Commission pursuant to the Contract. In a letter to the Executive Director of the Commission, IT–Davy outlined its position regarding the materially different site conditions and the charges incurred by IT–Davy as a result:

**Material Density of the Contaminated Soil** $3,739,290

*The actual waste feed material density at the site was lower than the density figures provided to IT[Davy] when IT[Davy] submitted its bid for the Contract.*

**Level of Groundwater Contamination** $1,242,444

*The concentration of contaminated water requiring on-site treatment was greater than the average contamination level reported in the Remedial Investigation Report.*

**Dual Stack Test Requirement** $ 607,289

*[The Commission] required IT[Davy] to test and sample both stacks on the incineration facility when testing of only one stack was necessary under the Contract.*

**Repeated Shallow Excavation** $ 560,102

*[The Commission] directed IT[Davy] to excavate contaminated soils from the site in multiple shallow cuts, which were in many cases unnecessary and increased IT[Davy] costs beyond what it had reasonably anticipated for excavation.*

**Selection of POHCs** $ 303,644

*[The Commission] ordered IT[Davy] to demonstrate the efficiency of the incineration facility using one volatile principal organic hazardous constituent ("pohc") and one semi-volatile POHC. This requirement was contrary to EPA guidance; unreasonable and unnecessary for establishing destruction removal efficiency.*

**Flood Damage Repair** $ 270,887

*Flood damage caused IT[Davy] to incur costs that were not anticipated in the bidding of the Contract. Under the Contract, [the Commission] had responsibility to insure the remediation work against damages from causes beyond the control of IT[Davy]. [The Commission] has been unreasonable in refusing to compensate IT–Davy for these costs.*

**TOTAL** $6,723,655

(Emphases in original.) The Commission responded in a letter from the Executive Director:

We appreciate the good work [IT–Davy] did at the Sikes site and the fact that the site was able to [sic] removed from the list of Superfund sites requiring remediation. We believe we have paid all amounts due not only under the original contract but also under the numerous contract amendments that we agreed to during the course of the clean-up.

If you feel the need to pursue additional remedies, we intend to participate in those with the good faith we have dem-

onstrated over the past several years. But we must decline your most recent demand for payment.

IT–Davy sought arbitration of the dispute over payment pursuant to the Remedies provision of the Contract, but the Commission denied this request.

IT–Davy then brought suit seeking declaratory relief and money damages, alleging causes of action for breach of contract, negligent misrepresentation, and quantum meruit/promissory estoppel. The Commission responded with a plea to the jurisdiction and a denial of the allegations. The trial court held a hearing on the Commission's plea. The parties stipulated that, for purposes of the hearing, all of the allegations of fact in IT–Davy's petition would be taken as true, and the trial court could consider the two letters quoted above for purposes of determining jurisdiction. After the hearing, the trial court denied the Commission's plea to the jurisdiction and this appeal ensued. The Commission challenges the trial court's finding of jurisdiction, arguing that as an agency of the State, it enjoys immunity from suit absent consent obtained from the legislature.

## DISCUSSION

■ IT–Davy asserts jurisdiction under four theories: (1) the Commission waived its immunity from suit by its acceptance of IT–Davy's undisputed full performance of the contract; (2) the legislature waived the Commission's immunity from suit by enacting a statute expressly allowing for judicial review of the Commission's actions; (3) the Declaratory Judgments Act waived the Commission's immunity from suit in lawsuits seeking a declaration of rights under a contract with the State; and (4) the Commission waived its immunity from suit in agreeing to the Contract's Remedies clause, which provides for court resolution of disputes under the contract. The trial court did not specify in its order the grounds on which it found jurisdiction. We may therefore affirm the order of the

trial court should we agree with any of these arguments. *See Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 642–43 (Tex.1996). We begin our review with the concept of sovereign immunity.

### Sovereign Immunity

■ It has long been recognized that sovereign immunity protects the State from lawsuits for damages, absent legislative consent to sue. *See, e.g., Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). The term "sovereign immunity" actually includes two principles: immunity from suit and immunity from liability. *Id.* Immunity from suit bars a suit against the State, even if the State acknowledges liability for the asserted claim, unless the legislature has given consent to sue. *Id.* Immunity from liability provides that even if the legislature has given consent to sue, the State may not be adjudged liable for the claim asserted. *Id.* When the State enters into a contract with a private entity, it gives up its immunity from liability, but not its immunity from suit. *Id.*

■ The Commission relies upon *Federal Sign* for the proposition that, because IT–Davy has not obtained consent from the legislature for this lawsuit, the trial court is without jurisdiction. *Federal Sign* involved a contract with Texas Southern University ("TSU") whereby Federal Sign was to build and deliver basketball scoreboards to TSU. Before Federal Sign had completed and delivered the scoreboards, TSU indicated that it would secure the scoreboards from another source. Federal Sign sued for breach of contract. The trial court overruled TSU's plea to the jurisdiction, submitted the cause to the jury, and rendered judgment on the jury verdict in favor of Federal Sign. On appeal, the supreme court reversed, holding: "The act of contracting does not waive the State's immunity from suit." *See Federal Sign*, 951 S.W.2d at 408. However, the supreme court expressly limited its decision to the facts at hand:

We hasten to observe that neither this case nor the ones on which it relies should be read too broadly. We do not attempt to decide this issue in any other circumstances other than the one before us today. There may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts.

*Id.* at 408 n. 1.

This Court has had occasion to visit the concept of sovereign immunity in two recent opinions. *See Little–Tex Insulation Co. v. General Servs. Comm'n*, 997 S.W.2d 358 (Tex.App.—Austin 1999, no pet. h.); *Aer–Aerotron, Inc. v. Texas Dep't of Transp.*, 997 S.W.2d 687 (Tex.App.—Austin 1999, no pet. h.). Our holding in this cause is guided by the principles outlined in these previous cases. Both *Little–Tex* and *Aer–Aerotron* recognize that the supreme court in *Federal Sign* left the door open to waiver of immunity from suit by conduct: "[T]his Court has recently interpreted *Federal Sign* to mean that 'only the legislature can generally pronounce that the mere act of signing a contract abrogates the State's immunity from suit, but an entity of the State may waive its immunity with regard to a particular contract if warranted by its conduct.'" *See Little–Tex*, at 363 (quoting *Aer–Aerotron*, at 691).[2]

We thus turn to an analysis of whether the Commission engaged in conduct, beyond the mere execution of the contract, that waived its immunity from suit. In *Little–Tex* we held that, under the facts presented therein, the State effectuates a waiver of immunity from suit when it accepts goods or services tendered pursuant to a contract and then refuses to pay for the accepted goods and services. *See Lit-*

*tle–Tex*, at 364–65. IT–Davy alleged in its pleadings that it fully performed on the Contract and even executed additional work at the express request of the Commission, that the Commission accepted this work, and that the Commission has failed to fully pay for the accepted services. The Commission has stipulated that the allegations of fact contained in IT–Davy's petition shall be accepted as true for purposes of its plea to the jurisdiction. Based upon our holdings in *Aer–Aerotron* and *Little–Tex*, these allegations alone are sufficient to waive the Commission's immunity from suit for purposes of this appeal. We therefore overrule the Commission's single point of error challenging the trial court's jurisdiction. Accordingly, we need not address IT–Davy's remaining assertions of jurisdiction.

## CONCLUSION

Based upon case law and the stipulation of the parties, we take IT–Davy's allegations of fact as true. IT–Davy has pled full performance of a contract, acceptance by the Commission, and a failure of the Commission to pay for the accepted services. These allegations are sufficient to show that the Commission has engaged in conduct, beyond the mere execution of a contract, that waives its immunity from suit. Consequently, we affirm the trial court's order denying the Commission's plea to the jurisdiction.

---

**2.** We note that two other courts of appeal have addressed the State's immunity from suit in a breach of contract case; the holdings of both courts are consistent with our interpretation of *Federal Sign. See Texas S. Univ. v. Araserve Campus Dining Servs., Inc.,* 981 S.W.2d 929, 932 (Tex.App.—Houston [1st Dist.] 1998, pet. denied); *Alamo Community College Dist. v. Obayashi Corp.,* 980 S.W.2d 745, 749 (Tex.App.—San Antonio 1998, pet. denied).