# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00022-CV

**Texas A&M University-Kingsville, Appellant**

**v.**

**Grant M. Lawson, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. 99-01282, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING

In this interlocutory appeal, Texas A&M University-Kingsville (TAMUK) challenges the trial court's denial of its plea to the jurisdiction asserting sovereign immunity from suit.[1] Lawson is suing TAMUK for breach of a settlement agreement. TAMUK contends that it did not waive its immunity from suit (1) because the settlement agreement contained a void provision, and (2) because the breach of a settlement agreement never waives the State's immunity from suit. We will affirm the district court's order and remand this cause for further proceedings.

## BACKGROUND

We determine the trial court's jurisdiction from good-faith factual allegations made by the plaintiff. *See Brannon v. Pacific Employers Ins. Co.*, 224 S.W.2d 466, 469 (Tex. 1949); *Flowers v. Lavaca County Appraisal Dist.*, 766 S.W.2d 825, 827 (Tex. App.—Corpus Christi 1989,

---

[1] We have jurisdiction over this appeal. *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999).

writ denied). Unless the defendant pleads and proves that such allegations were made fraudulently to confer jurisdiction, courts accept them as true. *See Flowers*, 766 S.W.2d at 827; *see also Firemen's Ins. Co. v. Board of Regents of the Univ. of Tex. Sys.*, 909 S.W.2d 540, 542 (Tex. App.—Austin 1995, writ denied). TAMUK does not assert that the allegations are fraudulent. We take our recitation of facts from Lawson's pleadings.

The dispute and litigation in this case have lingered far longer than Lawson's employment at TAMUK. Lawson worked as an instructor from 1989 until he was fired in September 1992.[2] Lawson sued TAMUK for wrongful termination. In October 1994, the parties reached a settlement agreement under which TAMUK agreed to pay Lawson $60,000 and use its best effort to obtain approval for the payment by December 1994. By the time TAMUK obtained the warrant in March 1995, Lawson had already declared TAMUK in "default" on the agreement. After a second mediation in May 1995, TAMUK increased the settlement amount to $62,000 in exchange for Lawson's dismissal of the lawsuit and release of the defendants. TAMUK also agreed that its personnel director would tell inquiring potential employers that Lawson had been an assistant professor instead of an instructor;[3] in his petition below, Lawson alleges that the agreement "effectively promoted Dr. Lawson to Assistant Professor."[4]

---

[2]  During Lawson's employment, the university was called Texas A&I University. The name changed in 1993 to reflect its affiliation with the Texas A&M University System.

[3]  The copy of the agreement in the appellate record also shows that, if TAMUK's president initiated contact with potential employers for the purpose of helping Lawson get hired, the president would not have to say Lawson was an assistant professor.

[4]  TAMUK states that Lawson's lack of a doctoral degree at the time of his dismissal in 1992 meant he was not qualified for the position of assistant professor when he was dismissed and that representing him as such would thus be a fraud. Even accepting that as true, it does not dispense with Lawson's contention that the purpose of the settlement agreement was to confer the benefits that the

The parties performed most of the agreement. After TAMUK paid him $62,000, Lawson dismissed the lawsuit with prejudice to refiling and released the defendants. Lawson learned, however, that TAMUK employees told other universities that he had been an instructor, not an assistant professor. Lawson alleges that TAMUK's failure to state that he was an assistant professor caused the other universities to eliminate him from consideration.

Lawson then filed this suit for breach of the settlement agreement. The district court denied TAMUK's plea that its immunity from suit deprived the court of jurisdiction. This interlocutory appeal ensued.

## DISCUSSION

TAMUK denies that it has waived immunity from this suit. TAMUK argues that it cannot waive sovereign immunity with regard to an agreement that settles a lawsuit. TAMUK also contends that the breached provision in the settlement agreement cannot support waiver because it is void for requiring TAMUK to misrepresent Lawson's employment history.

In addition to answering TAMUK's contentions, Lawson makes the interesting argument that a breached settlement agreement presents an even more compelling case for finding waiver, at least when the court in the underlying suit denied a plea to the jurisdiction before the settlement. Lawson's argument in this Court may have been prompted by the district court's comments in open court when announcing its denial of the plea to the jurisdiction:

---

allegedly wrongful termination denied him: two years' salary at $31,000 per year and the title of assistant professor upon the conferring of the doctoral degree. We expressly do not pass on the merits of that contention, but note that it is an issue for the trial on the merits.

3

[W]hen somebody sues the state and the Court has jurisdiction over that case, which the Court did in Cause No. 92-149848 [the underlying wrongful termination suit], and that case is settled by the state and the state doesn't live up to the settlement agreement, a plaintiff can bring a suit to enforce or seek damages for violation of that settlement agreement and that the state has waived its sovereign immunity, or doesn't have any sovereign immunity, however you want to look at it when you're talking about the settlement of a case within the Court's jurisdiction.

TAMUK rejects this theory as an unwarranted erosion of sovereign immunity. Lawson argues that TAMUK's acceptance of the benefits of the settlement waives immunity under the theory of waiver by conduct enunciated by this Court.[5]

Sovereign immunity, unless waived, protects state entities like TAMUK from lawsuits for damages, absent legislative consent to sue. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). Sovereign immunity embraces immunity both from liability and suit. *Id.* When the State contracts with private citizens, it waives immunity from liability and is liable as if it were a private person. *Id.* However, even if the State's liability is undisputed, it retains immunity from suit unless waived. Historically, courts have required a clear and unambiguous waiver of immunity by the sovereign. *Id.* In *Federal Sign*, however, while concluding that Texas Southern did not waive immunity from suit merely by contracting with a private party, the supreme court noted that "[t]here may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts." *Id.* at 408 n.1. The

---

[5] TAMUK repeatedly states that it rejects the theory of waiver by conduct. Though the supreme court on July 7, 2000 granted petitions for review in two of the cases in which we discuss the theory of waiver by conduct, these cases remain binding precedent in this Court. *See Aer-Aerotron, Inc. v. Texas Dep't of Transp.*, 997 S.W.2d 687, 691-92 (Tex. App.—Austin 1999, pet. granted); *Little-Tex Insulation Co. v. General Servs. Comm'n*, 997 S.W.2d 358, 364 (Tex. App.—Austin 1999, pet. granted).

4

court held that Texas Southern retained its immunity by canceling its contract to buy scoreboards from Federal Sign before the scoreboards were delivered; Federal Sign's partial construction of the scoreboards was not sufficient to trigger a waiver of immunity from suit in the absence of any acceptance of that performance by Texas Southern. *See id.* at 408.

This Court has since found repeatedly that state agencies waive their immunity from suit by accepting some of the benefits of a contract and refusing to pay for them. *See Texas Natural Resource Conservation Comm'n v. IT-Davy*, 998 S.W.2d 898, 902 (Tex. App.—Austin 1999, pet. filed); *Aer-Aerotron, Inc. v. Texas Dep't of Transp.*, 997 S.W.2d 687, 691-92 (Tex. App.—Austin 1999, pet. granted); *Little-Tex Insulation Co. v. General Servs. Comm'n*, 997 S.W.2d 358, 364 (Tex. App.—Austin 1999, pet. granted). In these cases, we relied in part on similar decisions by other appellate courts. *See Alamo Community College Dist. v. Obayashi Corp.*, 980 S.W.2d 745, 749-50 (Tex. App.—San Antonio 1998, pet. denied); *see also Texas S. Univ. v. Araserve Campus Dining Servs., Inc.*, 981 S.W.2d 929, 935 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

TAMUK contends that the above cases do not control this lawsuit because they all concern goods and services, whereas this is a settlement agreement. In *Aer-Aerotron*, the state agency tested radios, contracted to buy them, extended the term of the contract, trebled the number of radio units ordered, accepted Aerotron's technical services, paid for some of the performance, and acknowledged its financial obligations by twice promising to pay the balance due to Aerotron; instead of continuing to pay, however, the agency announced it would return all radios accepted but not paid for, demanded that Aerotron fix all the radios it had paid for or refund the entire amount paid, and canceled all pending orders. *Aer-Aerotron*, 997 S.W.2d at 691-92. In *IT-Davy*, the construction

5

contractor alleged that it performed fully and did extra work at the Commission's request; when it sought, as allowed by the contract, additional compensation for extra expenses caused by unexpected conditions at the site, the Commission refused to pay and rejected a request for arbitration. *IT-Davy*, 998 S.W.2d at 899-900. In *Little-Tex*, the Commission accepted part of Little-Tex's performance in abating asbestos in a building, partially paid, requested correction of some work, and refused to pay for the remainder. *Little-Tex*, 997 S.W.2d at 360. In all three cases, this Court found that the State waived its immunity from suit by accepting part of the company's performance and refusing to pay for it. *See IT-Davy*, 998 S.W.2d at 902; *Aer-Aerotron*, 997 S.W.2d at 692; *Little-Tex*, 997 S.W.2d at 364. We note that in all three cases, we determined only jurisdiction, not liability.

We are not persuaded to treat this agreement differently from contracts for goods and services. The parties' settlement is essentially a contract for services, however brief. Lawson had to dismiss his suit and release the defendants. Because the dismissal was with prejudice, Lawson surrendered the right to reinstate the suit for damages. TAMUK benefitted from Lawson's performance because it did not have to defend itself from the suit. We do not characterize this performance as significantly different from providing radios or abating asbestos, nor do we foresee that this characterization will unleash a flood of similar suits. We prefer to believe that state agencies do not often make settlement agreements, accept the full performance of the promissor, and then refuse to perform their obligations. If they do, they should be held accountable under the theory of waiver by conduct.

We also conclude that the alleged voidness of the provision in dispute did not prevent TAMUK from waiving its immunity. First, it is not clear that the agreement is void. The agreement

requires TAMUK to represent that Lawson was an assistant professor receiving $31,000 per year, though he was an instructor while working there. Lawson alleges that the agreement "effectively promoted" him to assistant professor. TAMUK asserts that it could not promote someone who no longer worked there, but the record is unclear.[6] Voidness affects whether Lawson can recover on the agreement, not whether he can sue to enforce it. The waiver inquiry is limited to whether Lawson has alleged that TAMUK accepted the benefits of the settlement agreement to his detriment. *See IT-Davy*, 998 S.W.2d at 902.

To hold that voidness promotes immunity would reward state officials who make void contracts, accept the benefits, refuse to perform, and thereafter hide behind the shield of sovereign immunity.[7] Such reward would be especially unfair in the context of settlement agreements, particularly when plaintiffs agree to dismiss their suits with prejudice. Voidness may be a basis for summary judgment, but it is an untenable basis on which to preserve immunity.

We need not reach Lawson's argument favoring "continuing" jurisdiction over suits for breach of contract because we conclude that TAMUK waived its immunity from suit by accepting Lawson's performance of the settlement agreement. Each side essentially agreed to do two things. Lawson fully complied by dismissing his suit and releasing the defendants. TAMUK paid the $62,000, but balked at performing its remaining obligation to represent that Lawson had been an

---

[6]    For example, the record does not show that TAMUK could not "rehire" Lawson, pay him two years' back salary, promote him to assistant professor, and release him; that is an issue of proof affecting liability, not an immunity issue.

[7]    In no way do we imply that TAMUK entered the settlement agreement not intending to perform. We are simply considering the possible impact of our decision on future actions by State officials, as TAMUK invites us to do.

assistant professor. Thus, TAMUK has received the full benefit of its bargain while denying Lawson half of what he bargained for. TAMUK dismisses the employment representation clause as a *de minimus* part of the bargain, but the contentions in this case belie that assertion. Lawson bargained for the employment representation clause and asserts that TAMUK's refusal to perform has cost him jobs; TAMUK claims that this "illegal" obligation is significant enough to render the contract void. Whether the agreement can be enforced and whether it is of *de minimus* value are issues for the trial court to decide upon further proceedings. We hold that TAMUK's conduct exceeds the mere execution of an agreement because TAMUK has accepted the full benefits of its settlement agreement without performing its full obligations. Under the authority of *Federal Sign*, *Aer-Aerotron*, and their progeny, we conclude that TAMUK has waived its sovereign immunity. *See Federal Sign*, 951 S.W.2d at 408 n.1; *Aer-Aerotron*, 997 S.W.2d at 691-92.

## CONCLUSION

Having resolved all the issues against TAMUK, we affirm the district court's denial of the plea to the jurisdiction and remand the cause for further proceedings consistent with this opinion. We emphasize that our recitation of the facts in this opinion is based on the pleadings in the district court and representations made in this Court. Subsequent production of evidence may show the objective truth to differ from these allegations, and nothing in our opinion restricts production of such evidence or findings of fact differing from our recitations. By our opinion and judgment, we merely affirm the district court's ruling that TAMUK waived its immunity from suit.

8

_____

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed:   September 14, 2000

Publish