TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00022-CV






Texas A&M University-Kingsville, Appellant



v.



Grant M. Lawson, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 99-01282, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING 






 In this interlocutory appeal, Texas A&M University-Kingsville (TAMUK)
challenges the trial court's denial of its plea to the jurisdiction asserting sovereign immunity from
suit.(1) Lawson is suing TAMUK for breach of a settlement agreement. TAMUK contends that it
did not waive its immunity from suit (1) because the settlement agreement contained a void
provision, and (2) because the breach of a settlement agreement never waives the State's immunity
from suit. We will affirm the district court's order and remand this cause for further proceedings.


BACKGROUND


 We determine the trial court's jurisdiction from good-faith factual allegations made
by the plaintiff. See Brannon v. Pacific Employers Ins. Co., 224 S.W.2d 466, 469 (Tex. 1949);
Flowers v. Lavaca County Appraisal Dist., 766 S.W.2d 825, 827 (Tex. App.--Corpus Christi
1989, writ denied). Unless the defendant pleads and proves that such allegations were made
fraudulently to confer jurisdiction, courts accept them as true. See Flowers, 766 S.W.2d at 827;
see also Firemen's Ins. Co. v. Board of Regents of the Univ. of Tex. Sys., 909 S.W.2d 540, 542
(Tex. App.--Austin 1995, writ denied). TAMUK does not assert that the allegations are
fraudulent. We take our recitation of facts from Lawson's pleadings.

 The dispute and litigation in this case have lingered far longer than Lawson's
employment at TAMUK. Lawson worked as an instructor from 1989 until he was fired in
September 1992.(2) Lawson sued TAMUK for wrongful termination. In October 1994, the parties
reached a settlement agreement under which TAMUK agreed to pay Lawson $60,000 and use its
best effort to obtain approval for the payment by December 1994. By the time TAMUK obtained
the warrant in March 1995, Lawson had already declared TAMUK in "default" on the agreement. 
After a second mediation in May 1995, TAMUK increased the settlement amount to $62,000 in
exchange for Lawson's dismissal of the lawsuit and release of the defendants. TAMUK also
agreed that its personnel director would tell inquiring potential employers that Lawson had been
an assistant professor instead of an instructor;(3) in his petition below, Lawson alleges that the
agreement "effectively promoted Dr. Lawson to Assistant Professor."(4)

 The parties performed most of the agreement. After TAMUK paid him $62,000,
Lawson dismissed the lawsuit with prejudice to refiling and released the defendants. Lawson
learned, however, that TAMUK employees told other universities that he had been an instructor,
not an assistant professor. Lawson alleges that TAMUK's failure to state that he was an assistant
professor caused the other universities to eliminate him from consideration.

 Lawson then filed this suit for breach of the settlement agreement. The district
court denied TAMUK's plea that its immunity from suit deprived the court of jurisdiction. This
interlocutory appeal ensued.


DISCUSSION


 TAMUK denies that it has waived immunity from this suit. TAMUK argues that
it cannot waive sovereign immunity with regard to an agreement that settles a lawsuit. TAMUK
also contends that the breached provision in the settlement agreement cannot support waiver
because it is void for requiring TAMUK to misrepresent Lawson's employment history.

 In addition to answering TAMUK's contentions, Lawson makes the interesting
argument that a breached settlement agreement presents an even more compelling case for finding
waiver, at least when the court in the underlying suit denied a plea to the jurisdiction before the
settlement. Lawson's argument in this Court may have been prompted by the district court's
comments in open court when announcing its denial of the plea to the jurisdiction:

 [W]hen somebody sues the state and the Court has jurisdiction over that case,
which the Court did in Cause No. 92-149848 [the underlying wrongful termination
suit], and that case is settled by the state and the state doesn't live up to the
settlement agreement, a plaintiff can bring a suit to enforce or seek damages for
violation of that settlement agreement and that the state has waived its sovereign
immunity, or doesn't have any sovereign immunity, however you want to look at
it when you're talking about the settlement of a case within the Court's jurisdiction.


TAMUK rejects this theory as an unwarranted erosion of sovereign immunity. Lawson argues
that TAMUK's acceptance of the benefits of the settlement waives immunity under the theory of
waiver by conduct enunciated by this Court.(5)

 Sovereign immunity, unless waived, protects state entities like TAMUK from
lawsuits for damages, absent legislative consent to sue. See Federal Sign v. Texas S. Univ., 951
S.W.2d 401, 405 (Tex. 1997). Sovereign immunity embraces immunity both from liability and
suit. Id. When the State contracts with private citizens, it waives immunity from liability and is
liable as if it were a private person. Id. However, even if the State's liability is undisputed, it
retains immunity from suit unless waived. Historically, courts have required a clear and
unambiguous waiver of immunity by the sovereign. Id. In Federal Sign, however, while
concluding that Texas Southern did not waive immunity from suit merely by contracting with a
private party, the supreme court noted that "[t]here may be other circumstances where the State
may waive its immunity by conduct other than simply executing a contract so that it is not always
immune from suit when it contracts." Id. at 408 n.1. The court held that Texas Southern retained
its immunity by canceling its contract to buy scoreboards from Federal Sign before the scoreboards
were delivered; Federal Sign's partial construction of the scoreboards was not sufficient to trigger
a waiver of immunity from suit in the absence of any acceptance of that performance by Texas
Southern. See id. at 408.

 This Court has since found repeatedly that state agencies waive their immunity from
suit by accepting some of the benefits of a contract and refusing to pay for them. See Texas
Natural Resource Conservation Comm'n v. IT-Davy, 998 S.W.2d 898, 902 (Tex. App.--Austin
1999, pet. filed); Aer-Aerotron, Inc. v. Texas Dep't of Transp., 997 S.W.2d 687, 691-92 (Tex.
App.--Austin 1999, pet. granted); Little-Tex Insulation Co. v. General Servs. Comm'n, 997
S.W.2d 358, 364 (Tex. App.--Austin 1999, pet. granted). In these cases, we relied in part on
similar decisions by other appellate courts. See Alamo Community College Dist. v. Obayashi
Corp., 980 S.W.2d 745, 749-50 (Tex. App.--San Antonio 1998, pet. denied); see also Texas S.
Univ. v. Araserve Campus Dining Servs., Inc., 981 S.W.2d 929, 935 (Tex. App.--Houston [1st
Dist.] 1998, pet. denied).

 TAMUK contends that the above cases do not control this lawsuit because they all
concern goods and services, whereas this is a settlement agreement. In Aer-Aerotron, the state
agency tested radios, contracted to buy them, extended the term of the contract, trebled the number
of radio units ordered, accepted Aerotron's technical services, paid for some of the performance,
and acknowledged its financial obligations by twice promising to pay the balance due to Aerotron;
instead of continuing to pay, however, the agency announced it would return all radios accepted
but not paid for, demanded that Aerotron fix all the radios it had paid for or refund the entire
amount paid, and canceled all pending orders. Aer-Aerotron, 997 S.W.2d at 691-92. In IT-Davy,
the construction contractor alleged that it performed fully and did extra work at the Commission's
request; when it sought, as allowed by the contract, additional compensation for extra expenses
caused by unexpected conditions at the site, the Commission refused to pay and rejected a request
for arbitration. IT-Davy, 998 S.W.2d at 899-900. In Little-Tex, the Commission accepted part
of Little-Tex's performance in abating asbestos in a building, partially paid, requested correction
of some work, and refused to pay for the remainder. Little-Tex, 997 S.W.2d at 360. In all three
cases, this Court found that the State waived its immunity from suit by accepting part of the
company's performance and refusing to pay for it. See IT-Davy, 998 S.W.2d at 902; Aer-Aerotron, 997 S.W.2d at 692; Little-Tex, 997 S.W.2d at 364. We note that in all three cases, we
determined only jurisdiction, not liability.

 We are not persuaded to treat this agreement differently from contracts for goods
and services. The parties' settlement is essentially a contract for services, however brief. Lawson
had to dismiss his suit and release the defendants. Because the dismissal was with prejudice,
Lawson surrendered the right to reinstate the suit for damages. TAMUK benefitted from
Lawson's performance because it did not have to defend itself from the suit. We do not
characterize this performance as significantly different from providing radios or abating asbestos,
nor do we foresee that this characterization will unleash a flood of similar suits. We prefer to
believe that state agencies do not often make settlement agreements, accept the full performance
of the promissor, and then refuse to perform their obligations. If they do, they should be held
accountable under the theory of waiver by conduct.

 We also conclude that the alleged voidness of the provision in dispute did not
prevent TAMUK from waiving its immunity. First, it is not clear that the agreement is void. The
agreement requires TAMUK to represent that Lawson was an assistant professor receiving
$31,000 per year, though he was an instructor while working there. Lawson alleges that the
agreement "effectively promoted" him to assistant professor. TAMUK asserts that it could not
promote someone who no longer worked there, but the record is unclear.(6) Voidness affects
whether Lawson can recover on the agreement, not whether he can sue to enforce it. The waiver
inquiry is limited to whether Lawson has alleged that TAMUK accepted the benefits of the
settlement agreement to his detriment. See IT-Davy, 998 S.W.2d at 902.

 To hold that voidness promotes immunity would reward state officials who make
void contracts, accept the benefits, refuse to perform, and thereafter hide behind the shield of
sovereign immunity.(7) Such reward would be especially unfair in the context of settlement
agreements, particularly when plaintiffs agree to dismiss their suits with prejudice. Voidness may
be a basis for summary judgment, but it is an untenable basis on which to preserve immunity.

 We need not reach Lawson's argument favoring "continuing" jurisdiction over suits
for breach of contract because we conclude that TAMUK waived its immunity from suit by
accepting Lawson's performance of the settlement agreement. Each side essentially agreed to do
two things. Lawson fully complied by dismissing his suit and releasing the defendants. TAMUK
paid the $62,000, but balked at performing its remaining obligation to represent that Lawson had
been an assistant professor. Thus, TAMUK has received the full benefit of its bargain while
denying Lawson half of what he bargained for. TAMUK dismisses the employment representation
clause as a de minimus part of the bargain, but the contentions in this case belie that assertion. 
Lawson bargained for the employment representation clause and asserts that TAMUK's refusal
to perform has cost him jobs; TAMUK claims that this "illegal" obligation is significant enough
to render the contract void. Whether the agreement can be enforced and whether it is of de
minimus value are issues for the trial court to decide upon further proceedings. We hold that
TAMUK's conduct exceeds the mere execution of an agreement because TAMUK has accepted
the full benefits of its settlement agreement without performing its full obligations. Under the
authority of Federal Sign, Aer-Aerotron, and their progeny, we conclude that TAMUK has waived
its sovereign immunity. See Federal Sign, 951 S.W.2d at 408 n.1; Aer-Aerotron, 997 S.W.2d at
691-92.


CONCLUSION


 Having resolved all the issues against TAMUK, we affirm the district court's denial
of the plea to the jurisdiction and remand the cause for further proceedings consistent with this
opinion. We emphasize that our recitation of the facts in this opinion is based on the pleadings
in the district court and representations made in this Court. Subsequent production of evidence
may show the objective truth to differ from these allegations, and nothing in our opinion restricts
production of such evidence or findings of fact differing from our recitations. By our opinion and
judgment, we merely affirm the district court's ruling that TAMUK waived its immunity from
suit.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: September 14, 2000

Publish


1. We have jurisdiction over this appeal. See Texas Dep't of Transp. v. Jones, 8 S.W.3d 636,
639 (Tex. 1999).
2. During Lawson's employment, the university was called Texas A&I University. The name
changed in 1993 to reflect its affiliation with the Texas A&M University System.
3. The copy of the agreement in the appellate record also shows that, if TAMUK's president
initiated contact with potential employers for the purpose of helping Lawson get hired, the
president would not have to say Lawson was an assistant professor.
4. TAMUK states that Lawson's lack of a doctoral degree at the time of his dismissal in 1992
meant he was not qualified for the position of assistant professor when he was dismissed and that
representing him as such would thus be a fraud. Even accepting that as true, it does not dispense
with Lawson's contention that the purpose of the settlement agreement was to confer the benefits
that the allegedly wrongful termination denied him: two years' salary at $31,000 per year and the
title of assistant professor upon the conferring of the doctoral degree. We expressly do not pass
on the merits of that contention, but note that it is an issue for the trial on the merits.
5. TAMUK repeatedly states that it rejects the theory of waiver by conduct. Though the
supreme court on July 7, 2000 granted petitions for review in two of the cases in which we discuss
the theory of waiver by conduct, these cases remain binding precedent in this Court. See Aer-Aerotron, Inc. v. Texas Dep't of Transp., 997 S.W.2d 687, 691-92 (Tex. App.--Austin 1999, pet.
granted); Little-Tex Insulation Co. v. General Servs. Comm'n, 997 S.W.2d 358, 364 (Tex.
App.--Austin 1999, pet. granted).
6. For example, the record does not show that TAMUK could not "rehire" Lawson, pay him
two years' back salary, promote him to assistant professor, and release him; that is an issue of
proof affecting liability, not an immunity issue.
7. In no way do we imply that TAMUK entered the settlement agreement not intending to
perform. We are simply considering the possible impact of our decision on future actions by State 
officials, as TAMUK invites us to do.


 of contract because we conclude that TAMUK waived its immunity from suit by
accepting Lawson's performance of the settlement agreement. Each side essentially agreed to do
two things. Lawson fully complied by dismissing his suit and releasing the defendants. TAMUK
paid the $62,000, but balked at performing its remaining obligation to represent that Lawson had
been an assistant professor. Thus, TAMUK has received the full benefit of its bargain while
denying Lawson half of what he bargained for. TAMUK dismisses the employment representation
clause as a de minimus part of the bargain, but the contentions in this case belie that assertion. 
Lawson bargained for the employment representation clause and asserts that TAMUK's refusal
to perform has cost him jobs; TAMUK claims that this "illegal" obligation is significant enough
to render the contract void. Whether the agreement can be enforced and whether it is of de
minimus value are issues for the trial court to decide upon further proceedings. We hold that
TAMUK's conduct exceeds the mere execution of an agreement because TAMUK has accepted
the full benefits of its settlement agreement without performing its full obligations. Under the
authority of Federal Sign, Aer-Aerotron, and their progeny, we conclude that TAMUK has waived
its sovereign immunity. See Federal Sign, 951 S.W.2d at 408 n.1; Aer-Aerotron, 997 S.W.2d at
691-92.


CONCLUSION


 Having resolved all the issues against TAMUK, we affirm the district court's denial
of the plea to the jurisdiction and remand the cause for further proceedings consistent with this
opinion. We emphasize that our recitation of the facts in this opinion is based on the pleadings
in the district court and representations made in this Court. Subsequent production of evidence
may show the objective truth to differ from these allegations, and nothing in our opinion restricts
production of such evidence or findings of fact differing from our recitations. By our opinion and
judgment, we merely affirm the district court's ruling that TAMUK waived its immunity from
suit.



 truth to differ from these allegations, and nothing in our opinion restricts
production of such evidence or findings of fact differing from our recitations. By our opinion and
judgment, we merely affirm the district court's ruling that TAMUK waived its immunity from
suit.



 s A&M University-Kingsville, Appellant



v.



Grant M. Lawson, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 99-01282, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING 






 In this interlocutory appeal, Texas A&M University-Kingsville (TAMUK)
challenges the trial court's denial of its plea to the jurisdiction asserting sovereign immunity from
suit.(1) Lawson is suing TAMUK for breach of a settlement agreement. TAMUK contends that it
did not waive its immunity from suit (1) because the settlement agreement contained a void
provision, and (2) because the breach of a settlement agreement never waives the State's immunity
from suit. We will affirm the district court's order and remand this cause for further proceedings.


BACKGROUND


 We determine the trial court's jurisdiction from good-faith factual allegations made
by the plaintiff. See Brannon v. Pacific Employers Ins. Co., 224 S.W.2d 466, 469 (Tex. 1949);
Flowers v. Lavaca County Appraisal Dist., 766 S.W.2d 825, 827 (Tex. App.--Corpus Christi
1989, writ denied). Unless the defendant pleads and proves that such allegations were made
fraudulently to confer jurisdiction, courts accept them as true. See Flowers, 766 S.W.2d at 827;
see also Firemen's Ins. Co. v. Board of Regents of the Univ. of Tex. Sys., 909 S.W.2d 540, 542
(Tex. App.--Austin 1995, writ denied). TAMUK does not assert that the allegations are
fraudulent. We take our recitation of facts from Lawson's pleadings.

 The dispute and litigation in this case have lingered far longer than Lawson's
employment at TAMUK. Lawson worked as an instructor from 1989 until he was fired in
September 1992.(2) Lawson sued TAMUK for wrongful termination. In October 1994, the parties
reached a settlement agreement under which TAMUK agreed to pay Lawson $60,000 and use its
best effort to obtain approval for the payment by December 1994. By the time TAMUK obtained
the warrant in March 1995, Lawson had already declared TAMUK in "default" on the agreement. 
After a second mediation in May 1995, TAMUK increased the settlement amount to $62,000 in
exchange for Lawson's dismissal of the lawsuit and release of the defendants. TAMUK also
agreed that its personnel director would tell inquiring potential employers that Lawson had been
an assistant professor instead of an instructor;(3) in his petition below, Lawson alleges that the
agreement "effectively promoted Dr. Lawson to Assistant Professor."(4)

 The parties performed most of the agreement. After TAMUK paid him $62,000,
Lawson dismissed the lawsuit with prejudice to refiling and released the defendants. Lawson
learned, however, that TAMUK employees told other universities that he had been an instructor,
not an assistant professor. Lawson alleges that TAMUK's failure to state that he was an assistant
professor caused the other universities to eliminate him from consideration.

 Lawson then filed this suit for breach of the settlement agreement. The district
court denied TAMUK's plea that its immunity from suit deprived the court of jurisdiction. This
interlocutory appeal ensued.


DISCUSSION


 TAMUK denies that it has waived immunity from this suit. TAMUK argues that
it cannot waive sovereign immunity with regard to an agreement that settles a lawsuit. TAMUK
also contends that the breached provision in the settlement agreement cannot support waiver
because it is void for requiring TAMUK to misrepresent Lawson's employment history.

 In addition to answering TAMUK's contentions, Lawson makes the interesting
argument that a breached settlement agreement presents an even more compelling case for finding
waiver, at least when the court in the underlying suit denied a plea to the jurisdiction before the
settlement. Lawson's argument in this Court may have been prompted by the district court's
comments in open court when announcing its denial of the plea to the jurisdiction:

 [W]hen somebody sues the state and the Court has jurisdiction over that case,
which the Court did in Cause No. 92-149848 [the underlying wrongful termination
suit], and that case is settled by the state and the state doesn't live up to the
settlement agreement, a plaintiff can bring a suit to enforce or seek damages for
violation of that settlement agreement and that the state has waived its sovereign
immunity, or doesn't have any sovereign immunity, however you want to look at
it when you're talking about the settlement of a case within the Court's jurisdiction.


TAMUK rejects this theory as an unwarranted erosion of sovereign immunity. Lawson argues
that TAMUK's acceptance of the benefits of the settlement waives immunity under the theory of
waiver by conduct enunciated by this Court.(5)

 Sovereign immunity, unless waived, protects state entities like TAMUK from
lawsuits for damages, absent legislative consent to sue. See Federal Sign v. Texas S. Univ., 951
S.W.2d 401, 405 (Tex. 1997). Sovereign immunity embraces immunity both from liability and
suit. Id. When the State contracts with private citizens, it waives immunity from liability and is
liable as if it were a private person. Id. However, even if the State's liability is undisputed, it
retains immunity from suit unless waived. Historically, courts have required a clear and
unambiguous waiver of immunity by the sovereign. Id. In Federal Sign, however, while
concluding that Texas Southern did not waive immunity from suit merely by contracting with a
private party, the supreme court noted that "[t]here may be other circumstances where the State
may waive its immunity by conduct other than simply executing a contract so that it is not always
immune from suit when it contracts." Id. at 408 n.1. The court held that Texas Southern retained
its immunity by canceling its contract to buy scoreboards from Federal Sign before the scoreboards
were delivered; Federal Sign's partial construction of the scoreboards was not sufficient to trigger
a waiver of immunity from suit in the absence of any acceptance of that performance by Texas
Southern. See id. at 408.

 This Court has since found repeatedly that state agencies waive their immunity from
suit by accepting some of the benefits of a contract and refusing to pay for them. See Texas
Natural Resource Conservation Comm'n v. IT-Davy, 998 S.W.2d 898, 902 (Tex. App.--Austin
1999, pet. filed); Aer-Aerotron, Inc. v. Texas Dep't of Transp., 997 S.W.2d 687, 691-92 (Tex.
App.--Austin 1999, pet. granted); Little-Tex Insulation Co. v. General Servs. Comm'n, 997
S.W.2d 358, 364 (Tex. App.--Austin 1999, pet. granted). In these cases, we relied in part on
similar decisions by other appellate courts. See Alamo Community College Dist. v. Obayashi
Corp., 980 S.W.2d 745, 749-50 (Tex. App.--San Antonio 1998, pet. denied); see also Texas S.
Univ. v. Araserve Campus Dining Servs., Inc., 981 S.W.2d 929, 935 (Tex. App.--Houston [1st
Dist.] 1998, pet. denied).

 TAMUK contends that the above cases do not control this lawsuit because they all
concern goods and services, whereas this is a settlement agreement. In Aer-Aerotron, the state
agency tested radios, contracted to buy them, extended the term of the contract, trebled the number
of radio units ordered, accepted Aerotron's technical services, paid for some of the performance,
and acknowledged its financial obligations by twice promising to pay the balance due to Aerotron;
instead of continuing to pay, however, the agency announced it would return all radios accepted
but not paid for, demanded that Aerotron fix all the radios it had paid for or refund the entire
amount paid, and canceled all pending orders. Aer-Aerotron, 997 S.W.2d at 691-92. In IT-Davy,
the construction contractor alleged that it performed fully and did extra work at the Commission's
request; when it sought, as allowed by the contract, additional compensation for extra expenses
caused by unexpected conditions at the site, the Commission refused to pay and rejected a request
for arbitration. IT-Davy, 998 S.W.2d at 899-900. In Little-Tex, the Commission accepted part
of Little-Tex's performance in abating asbestos in a building, partially paid, requested correction
of some work, and refused to pay for the remainder. Little-Tex, 997 S.W.2d at 360. In all three
cases, this Court found that the State waived its immunity from suit by accepting part of the
company's performance and refusing to pay for it. See IT-Davy, 998 S.W.2d at 902; Aer-Aerotron, 997 S.W.2d at 692; Little-Tex, 997 S.W.2d at 364. We note that in all three cases, we
determined only jurisdiction, not liability.

 We are not persuaded to treat this agreement differently from contracts for goods
and services. The parties' settlement is essentially a contract for services, however brief. Lawson
had to dismiss his suit and release the defendants. Because the dismissal was with prejudice,
Lawson surrendered the right to reinstate the suit for damages. TAMUK benefitted from
Lawson's performance because it did not have to defend itself from the suit. We do not
characterize this performance as significantly different from providing radios or abating asbestos,
nor do we foresee that this characterization will unleash a flood of similar suits. We prefer to
believe that state agencies do not often make settlement agreements, accept the full performance
of the promissor, and then refuse to perform their obligations. If they do, they should be held
accountable under the theory of waiver by conduct.

 We also conclude that the alleged voidness of the provision in dispute did not
prevent TAMUK from waiving its immunity. First, it is not clear that the agreement is void. The
agreement requires TAMUK to represent that Lawson was an assistant professor receiving
$31,000 per year, though he was an instructor while working there. Lawson alleges that the
agreement "effectively promoted" him to assistant professor. TAMUK asserts that it could not
promote someone who no longer worked there, but the record is unclear.(6) Voidness affects
whether Lawson can recover on the agreement, not whether he can sue to enforce it. The waiver
inquiry is limited to whether Lawson has alleged that TAMUK accepted the benefits of the
settlement agreement to his detriment. See IT-Davy, 998 S.W.2d at 902.

 To hold that voidness promotes immunity would reward state officials who make
void contracts, accept the benefits, refuse to perform, and thereafter hide behind the shield of
sovereign immunity.(7) Such reward would be especially unfair in the context of settlement
agreements, particularly when plaintiffs agree to dismiss their suits with prejudice. Voidness may
be a basis for summary judgment, but it is an untenable basis on which to preserve immunity.

 We need not reach Lawson's argument favoring "continuing" jurisdiction over suits
for breach of contract because we conclude that TAMUK waived its immunity from suit by
accepting Lawson's performance of the settlement agreement. Each side essentially agreed to do
two things. Lawson fully complied by dismissing his suit and releasing the defendants. TAMUK
paid the $62,000, but balked at performing its remaining obligation to represent that Lawson had
been an assistant professor. Thus, TAMUK has received the full benefit of its bargain while
denying Lawson half of what he bargained for. TAMUK dismisses the employment representation
clause as a de minimus part of the bargain, but the contentions in this case belie that assertion. 
Lawson bargained for the employment representation clause and asserts that TAMUK's refusal
to perform has cost him jobs; TAMUK claims that this "illegal" obligation is significant enough
to render the contract void. Whether the agreement can be enforced and whether it is of de
minimus value are issues for the trial court to decide upon further proceedings. We hold that
TAMUK's conduct exceeds the mere execution of an agreement because TAMUK has accepted
the full benefits of its settlement agreement without performing its full obligations. Under the
authority of Federal Sign, Aer-Aerotron, and their progeny, we conclude that TAMUK has waived
its sovereign immunity. See Federal Sign, 951 S.W.2d at 408 n.1; Aer-Aerotron, 997 S.W.2d at
691-92.


CONCLUSION


 Having resolved all the issues against TAMUK, we affirm the district court's denial
of the plea to the jurisdiction and remand the cause for further proceedings consistent with this
opinion. We emphasize that our recitation of the facts in this opinion is based on the pleadings
in the district court and representations made in this Court. Subsequent production of evidence
may show the objective truth to differ from these allegations, and nothing in our opinion restricts
production of such evidence or findings of fact differing from our recitations. By our opinion and
judgment, we merely affirm the district court's ruling that TAMUK waived its immunity from
suit.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: September 14, 2000

Publish


1. We have jurisdiction over this appeal. See Texas Dep't of Transp. v. Jones, 8 S.W.3d 636,
639 (Tex. 1999).
2. During Lawson's employment, the university was called Texas A&I University. The name
changed in 1993 to reflect its affiliation with the Texas A&M University System.
3. The copy of the agreement in the appellate record also shows that, if TAMUK's president
initiated contact with potential employers for the purpose of helping Lawson get hired, the
president would not have to say Lawson was an assistant professor.
4. TAMUK states that Lawson's lack of a doctoral degree at the time of his dismissal in 1992
meant he was not qualified for the position of assistant professor when he was dismissed and that
representing him as such would thus be a fraud. Even accepting that as true, it does not dispense
with Lawson's contention that the purpose of the settlement agreement was to confer the benefits
that the allegedly wrongful termination denied him: two years' salary at $31,000 per year and the
title of assistant professor upon the conferring of the doctoral degree. We expressly do not pass
on the merits of that contention, but note that it is an issue for the trial on the merits.
5. TAMUK repeatedly states that it rejects the theory of waiver by conduct. Though the
supreme court on July 7, 2000 granted petitions for review in two of the cases in which we discuss
the theory of waiver by conduct, these cases remain binding precedent in this Court. See Aer-Aerotron, Inc. v. Texas Dep't of Transp., 997 S.W.2d 687, 691-92 (Tex. App.--Austin 1999, pet.
granted); Little-Tex Insulation Co. v. General Servs. Comm'n, 997 S.W.2d 358, 364 (Tex.
App.--Austin 1999, pet. granted).
6. For example, the record does not show that TAMUK could not "rehire" Lawson, pay him
two years' back salary, promote him to assistant professor, and release him; that is an issue of
proof affecting liability, not an immunity issue.
7. In no way do we imply that TAMUK entered the settlement agreement not intending to
perform. We are simply considering the possible impact of our decision on future actions by State 
officials, as TAMUK invites us to do.


 of contract because we conclude that TAMUK waived its immunity from suit by
accepting Lawson's performance of the settlement agreement. Each side essentially agreed to do
two things. Lawson fully complied by dismissing his suit and releasing the defendants. TAMUK
paid the $62,000, but balked at performing its remaining obligation to represent that Lawson had
been an assistant professor. Thus, TAMUK has received the full benefit of its bargain while
denying Lawson half of what he bargained for. TAMUK dismisses the employment representation
clause as a de minimus part of the bargain, but the contentions in this case belie that assertion. 
Lawson bargained for the employment representation clause and asserts that TAMUK's refusal
to perform has cost him jobs; TAMUK claims that this "illegal" obligation is significant enough
to render the contract void. Whether the agreement can be enforced and whether it is of de
minimus value are issues for the trial court to decide upon further proceedings. We hold that
TAMUK's conduct exceeds the mere execution of an agreement because TAMUK has accepted
the full benefits of its settlement agreement without performing its full obligations. Under the
authority of Federal Sign, Aer-Aerotron, and their progeny, we conclude that TAMUK has waived
its sovereign immunity. See Federal Sign, 951 S.W.2d at 408 n.1; Aer-Aerotron, 997 S.W.2d at
691-92.


CONCLUSION


 Having resolved all the issues against TAMUK, we affirm the district court's denial
of the plea to the jurisdiction and remand the cause for further proceedings consistent with this
opinion. We emphasize that our recitation of the facts in this opinion is based on the pleadings
in the district court and representations made in this Court. Subsequent production of evidence
may show the objective truth to differ from these allegations, and nothing in our opinion restricts
production of such evidence or findings of fact differing from our recitations. By our opinion and
judgment, we merely affirm the district court's ruling that TAMUK waived its immunity from
suit.



 ion of said license.
* * * * * *
IV.
Licensor retains the right to enter upon the land to which this license applies and at Licensee's expense, to remove any vending stand ... whenever such removal is deemed to be necessary for exercising Licensor's rights or duties in regard to said public right-of-way, and for protecting persons or property, or public interest in regard to said public right-of-way; provided, however, Licensee shall be entitled to a hearing as soon as is reasonably practical under the circumstances before the City Manager of the City of Austin.
* * * * * *
VI.
This license is revocable by the City Manager at any time if, in the opinion of the City Manager, such revocation is reasonably required by the public interest, after having provided Licensee with notice and opportunity to be heard. Grounds for revocation of said license shall include, but are not limited to:
1. Licensee has failed to comply with the terms of this license; or,
2. The use of the portion of the right-of-way licensed herein interferes with the rights of the City or the public in said public right-of-way; or,
3. The use of the public right-of-way area becomes necessary for a public purpose; or,
4. Said use of the right-of-way constitutes a danger to the public which is not remediable by modification of the said use; or,
5. Alterations in use necessary to alleviate a danger to the public have not been made within a reasonable time after the dangerous condition has arisen.
Licensee shall have the right to appeal to the City Council any decision made by the City Manager under the provisions hereof which the Licensee considers to be adverse to his interest.
VII.
This license shall take effect upon the acceptance and satisfaction of the terms hereof by the named applicant for this license, as indicated by his signature hereon, and the filing of the same in the office of the City Manager of the City of Austin.