

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

August 1, 2008

Ms. Martha Galarza
Cameron County Auditor
Post Office Box 3846
Brownsville, Texas 78520

Opinion No. GA-0652

Re: Whether a county's alleged underpayment to indigent health care providers is an unconstitutional debt for purposes of article XI, section 7 of the Texas Constitution (RQ-0672-GA)

Dear Ms. Galarza:

Your predecessor in office informed us that health care providers submitted invoices for the fiscal year 2006–2007 for services provided to indigent residents of Cameron County in excess of the amount budgeted by the county for indigent health care in the 2006–2007 fiscal year.[1] Thus, he asked the following four questions about this excess amount:

1. Is this a "debt" within the meaning of Article XI, Section 7 of the Texas Constitution?

2. If it is a "debt" within the meaning of Article XI, Section 7[,] is it an "unconstitutional debt" prohibited by the Texas Constitution?

3. If it is an "unconstitutional debt" can it be ratified or paid by the Cameron County Commissioners Court?

4. If it is an "unconstitutional debt" is the Cameron County Auditor prohibited from approving the claims under . . . Local Gov[ernment] Code, [section] 113.065?

Request Letter, *supra* note 1, at 1.

---

[1]*See* Letter from Robert A. Almon, Cameron County Auditor, to Honorable Greg Abbott, Attorney General of Texas, at 1–2 (Feb. 1, 2008) (on file with the Opinion Committee, *also available at* http://www.texasattorneygeneral.gov) [hereinafter Request Letter].

## I.      Background

The Indigent Health Care and Treatment Act, chapter 61 of the Health and Safety Code, requires counties to provide a certain amount of health care to qualified indigent residents.[2] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 61.001–.066 (Vernon 2001 & Supp. 2007). Under chapter 61, the county is the payor of last resort for health care to persons who do not reside in the service area of a public hospital or hospital district. *Id.* §§ 61.002(2) (defining "eligible county resident"), .022 (specifying county obligation) (Vernon 2001). A county may "provide health care services through a local health department, a publicly owned facility, or a contract with a private [health care] provider." *Id.* § 61.029(a); *see also id.* § 61.030 (selection of mandated provider).

We understand that in Cameron County, in the fiscal year 2006–2007, indigent health care services were provided, and the indigent health care expenses at issue were incurred pursuant to several contracts executed under Health and Safety Code section 61.029(a). *See* Request Letter, *supra* note 1, at 2–3. It appears that pursuant to these contracts, invoices—including the invoices at issue here—were submitted to the county for payment "when the service was provided." *See id.* at 2. As we understand it, these invoices in the aggregate exceed the amount budgeted by the county for indigent health care for the 2006–2007 fiscal year. *Id.* at 1–2. That budgeted amount, as we understand it, was the total amount available for the payment of indigent health care services and included eight percent of the county's general tax revenues and matching state funds for indigent health care to be received for the 2006–2007 fiscal year. *Id.* at 1–3, 4; *see also supra* note 2.

## II.      Analysis

### A.      Unconstitutional Debt

The first two questions ask whether the indigent health care services invoices in excess of the budgeted amount constitute "debt" subject to the prohibition in Texas Constitution article XI, section 7. Article XI, section 7 prohibits a county or a city from incurring a "debt" without levying a tax to pay the interest on the obligation and at least two percent of the principal:

---

[2]The county's maximum liability for each state fiscal year for health care services provided to each eligible resident is limited to $30,000 or thirty days of hospitalization or treatment. TEX. HEALTH & SAFETY CODE ANN. § 61.035 (Vernon 2001). The county is eligible to receive state assistance to the extent of appropriated funds when the county spends at least eight percent of its general revenue levy for indigent health care. *Id.* § 61.037 (b)(1) (Vernon 2001), .0395 (Vernon Supp. 2007). If the state fails to provide the prescribed assistance—at least ninety percent of the actual health care payments during the remainder of the state fiscal year after the county's eight percent expenditure level is reached—"the county is not liable for payments for health care services provided to its eligible county residents after the county reaches the eight percent expenditure level." *Id.* § 61.039 (Vernon 2001). We were not asked, and we do not address whether Cameron County can be held liable for claims above its statutory obligation. *See, e.g.*, Tex. Att'y Gen. Op. No. JM-637 (1982) at 3 (concluding that the Indigent Health Care and Treatment Act, as it existed at the time, limited only a county's obligation and duty to provide health care assistance and not the county's legal power to provide such assistance).

> [N]o debt for any purpose shall ever be incurred in any manner by any
> city or county unless provision is made, at the time of creating the
> same, for levying and collecting a sufficient tax to pay the interest
> thereon and provide at least two per cent (2%) as a sinking fund[.]

TEX. CONST. art. XI, § 7. Any attempted creation or incurrence of a debt without also making such provision for payment "is contrary to the express prohibition of the constitution, and void." *McNeill v. City of Waco*, 33 S.W. 322, 323 (Tex. 1895); *see also Tex. & New Orleans R.R. Co. v. Galveston County*, 169 S.W.2d 713, 715 (Tex. 1943) ("If this provision is not made, the 'debt' is a nullity."). "A contract which violates these constitutional provisions is void, and the governmental unit involved need not pay any related obligation." *City-County Solid Waste Control Bd. v. Capital City Leasing, Inc.*, 813 S.W.2d 705, 707 (Tex. App.—Austin 1991, writ denied). The issue here is whether the indigent health care services invoices in excess of the budgeted amount are obligations related to contracts that violate the constitutional provision.

The term "debt" as used in article XI, section 7 "means any pecuniary obligation imposed by contract." *McNeill*, 33 S.W. at 324; *accord Stevenson v. Blake*, 113 S.W.2d 525, 527 (Tex. 1938); *Tex. & New Orleans R.R. Co.*, 169 S.W.2d at 715. However, a contract does not create a "debt" if the parties lawfully and reasonably contemplate when the contract is made that the obligation will be satisfied out of current revenues for the year, or out of some fund then within the immediate control of the governmental unit. *McNeill*, 33 S.W. at 324. A party seeking recovery on a contract bears the burden of showing that the obligation under the contract is not a "debt":

> Prima facie, every pecuniary obligation attempted to be created by
> contract is a debt, within the meaning of the constitutional provision[]
> . . ., and a party attempting to recover against the [governmental unit]
> must allege the facts showing a compliance with the constitution . . .
> or must allege such facts as bring the particular claim within the
> exception . . . in the definition of the word 'debt.'

*Id.*; *see also City of Bonham v. Sw. Sanitation, Inc.*, 871 S.W.2d 765, 769 (Tex. App.—Texarkana 1994, writ denied) (stating that the party seeking recovery on the contract has the burden of alleging and proving that the entire obligation could reasonably be paid from current revenues or funds on hand; "[o]therwise the contract is void and no recovery can be had on it" (citing *McNeill*, 33 S.W. at 323)). A contract that runs for more than one year is a commitment only of current revenues and thus is not a "debt" if it reserves to the governing body the right to terminate the contract at the end of each budget period. *City of Bonham*, 871 S.W.2d at 768; *City-County Solid Waste Control Bd.*, 813 S.W.2d at 707; *see also* TEX. LOC. GOV'T CODE ANN. § 271.903(a) (Vernon 2005) (commitment of current revenues).

Your predecessor asked about the aggregate amount of the invoices submitted pursuant to several contracts in excess of the amount budgeted by the county. *See* Request Letter, *supra* note 1, at 1. Based on the facts presented, we understand that under the several indigent health care services contracts, amounts are payable, not on any specified date, but when services are provided.

*See id.* at 2–3. But we have no other information regarding the contract dates and terms, including whether they are one- or multi-year contracts or whether they contain the right to terminate at the end of the budget year. Accordingly, we cannot determine whether they create "debt" as a matter of law. *Cf. City of Bonham*, 871 S.W.2d at 768 (determining that a multi-year contract with no right of termination at the end of each budget period was a "debt" unless payable from current revenues or funds on hand); *City-County Solid Waste Control Bd.*, 813 S.W.2d at 707 (determining that a contract with an anticipated term exceeding one year is a "debt" unless it reserves to the governing body the right to terminate at the end of each year); *see also* Tex. Att'y Gen. Op. Nos. GA-0176 (2004) at 2–3 (determining that a county contract indemnifying a third party for damages arising from the third party's negligence would constitute a debt), JC-0582 (2002) at 7 (determining that a multi-year county lease obligating the county to pay utilities and other maintenance charges was a debt), JC-0395 (2001) at 3 (determining that a multi-year contract for leasing office equipment constituted a "debt").

Thus, as your predecessor noted, the relevant test here is whether the county's pecuniary obligations under the various contracts were—when the contracts were executed—lawfully and reasonably contemplated to be made out of current revenues for the fiscal year 2006–2007 or out of funds then within the immediate control of the county. *See McNeill*, 33 S.W. at 323–24; *see also* Request Letter, *supra* note 1, at 4–5 (discussing relevant constitutional standard). This is a "fundamental and necessary" question of material fact in determining whether the county obligation undertaken by the various indigent health care services contracts is a debt. *See County of Ector v. City of Odessa*, 492 S.W.2d 360, 362–63 (Tex. Civ. App.—El Paso 1973, no writ); Tex. Att'y Gen. Op. No. JM-642 (1987) at 7; *see also Clay Bldg. Material Co. v. City of Wink*, 141 S.W.2d 1040, 1042 (Tex. Civ. App.—El Paso 1940, no writ) (stating that the obligation's purpose, the extent thereof, and the extent of a city's revenue may all have bearing on whether it is contemplated that the obligation be paid from current revenues, but none of them is necessarily conclusive on this question). This office cannot determine questions of fact in an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0492 (2006) at 3 (stating that questions of fact cannot be resolved in the opinion process). But, to provide guidance, we set out your predecessor's assertions as to the facts and discuss the answer to the question should the assertions be correct.

In apparent reliance on statements made by your predecessor's predecessor and past practices of the county, it appears that when the county entered into the indigent health care services contracts, it did not contemplate that the entire pecuniary obligation thereunder would be paid from current general tax revenues for the 2006-2007 fiscal year or other funds within the county's immediate control. Request Letter, *supra* note 1, at 1–2, 5.[3] First, your predecessor asserted that "[t]he bottom

---

[3] Your predecessor did not reference or cite to any provisions in the indigent health care services contracts or findings in commissioners court orders authorizing these contracts. A court considering this issue would likely examine the contract provisions and related commissioners court orders to determine whether the county contemplated paying its obligations under these contracts with current revenues for the 2006-2007 fiscal year. *See, e.g., Brown v. Jefferson County*, 406 S.W.2d 185, 188–89 (Tex. 1966) (examining county contract in determining whether indemnity provision created an unconstitutional debt); *Bexar County v. Hatley*, 150 S.W.2d 980, 988 (Tex. 1941) (examining commissioners
(continued...)

line is [that] in fiscal year 2006-07 the County did not anticipate paying more [than] the amount budgeted for indigent health care." Request Letter, *supra* note 1, at 5; *see also id.* at 1 ("Indigent health care service providers, invoiced the County for the fiscal year 2006-07 for $2, 220, 929.96 more than the County had anticipated to be paid without the use of future tax revenues."). He explained that, "after May 31[], 2007, [when the County had exhausted the amount budgeted or allocated for health care services], the County anticipated paying for 2006-07 indigent health care services, if at all, after all County and State funds set aside for indigent health care in Cameron County for the 2006-07 fiscal year had been spent, with 2007-08 general tax revenues." *Id.* at 5. Second, your predecessor informed, the same procedure has been followed in each of the past several years: "[A]fter funds set aside for indigent health care were exhausted, indigent health care for eligible county residents provided for the remainder of the fiscal year would be paid out of the general tax revenue from the subsequent fiscal year." *Id.* at 2.

If, as it appears to be suggested, the county did not contemplate when it entered into the health services contracts that the entire pecuniary obligation thereunder would be paid from its current general tax revenues for the 2006-2007 fiscal year or other funds within the county's immediate control, the indigent health care services contracts created "debt" within the meaning of article XI, section 7. *See* TEX. CONST. art. XI, § 7; *McNeill*, 33 S.W. at 324. And unless the county levied a tax to pay interest on the "debt" and provide a sinking fund of at least two percent to pay the principal, the contracts create "debt" that is prohibited by the constitutional provision. *See* TEX. CONST. art. XI, § 7; *McNeill*, 33 S.W. at 324; *City of Bonham,* 871 S.W.2d at 768. Under these circumstances, the indigent health care services invoices submitted in excess of the budgeted amount that is at issue here would constitute "debt" prohibited by article XI, section 7. *See Stevenson*, 113 S.W.2d at 527 (stating that the entire obligation under a contract made in violation of article XI, section 7 is void); *City-County Solid Waste Control Bd.*, 813 S.W.2d at 707 (stating that a contract violating article XI, section 7 is void, and "the governmental unit involved need not pay any related obligation"). We reiterate that the only amount in question is the aggregate excess amount, and our conclusion, based on the assumption that your predecessor's factual assertions about what the county contemplated are correct, is limited to this excess amount. We were not asked, and we cannot determine whether any of the several contracts to which the invoices specifically relate is unconstitutional and thus void in its entirety.

## B.    Ratification and Payment of Unconstitutional Debt

If the invoices for indigent health care services in excess of the budgeted amount constitute "debt" prohibited by Texas Constitution article XI, section 7, your predecessor asked whether the Cameron County Commissioners Court may ratify or pay it, and whether the Cameron County Auditor is prohibited from approving such claims under Local Government Code section 113.065.

---

[3](...continued)
court's order recitals and contract provision in determining whether expenditures were to be paid from currently available funds); *City-County Solid Waste Control Bd. v. Capital City Leasing, Inc.*, 813 S.W.2d 705, 707 (Tex. App.—Austin 1991, no writ) (examining anticipated term and termination provisions of a municipal lease in determining whether the lease created an unconstitutional debt).

*See* Request Letter, *supra* note 1, at 1; *see also* TEX. LOC. GOV'T CODE ANN. § 113.065 (Vernon 2008) ("The county auditor may not audit or approve a claim unless the claim was incurred as provided by law.").

We first consider ratification by the commissioners court. "As a general rule, void contracts cannot be ratified."[4]  *Richmond Printing v. Port of Houston Auth.*, 996 S.W.2d 220, 224 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see TCA Bldg. Co. v. Nw. Res. Co.*, 922 S.W.2d 629, 634 (Tex. App.—Waco 1996, writ denied); *Jack v. State*, 694 S.W.2d 391, 397 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). A contractual obligation incurred in violation of article XI, section 7 is void. *See Tex. & New Orleans R.R. Co*, 169 S.W.2d at 715 (stating that "debt" incurred in violation of article XI, section 7 "is a nullity"); *Stevenson*, 113 S.W.2d at 527 (stating that the entire obligation under a contract made in violation of article XI, section 7 is void); *City-County Solid Waste Control Bd.*, 813 S.W.2d at 707 (stating that a contract violating article XI, section 7 is void, and "the governmental unit involved need not pay any related obligation"). Accordingly, if the invoices for indigent health care services submitted in excess of the budgeted amount constitute "debt" prohibited by article XI, section 7, the Cameron County Commissioners Court cannot ratify them. *Cf. Jack*, 694 S.W.2d at 397 (upholding trial court's conclusion that lease made in violation of statute and thus void could not be ratified by the county); Tex. Att'y Gen. Op. Nos. GA-0247 (2004) at 8 (concluding that a commissioners court lacks authority to ratify a contract entered into in violation of purchasing statute); H-1237 (1978) at 1–2 ("The commissioners court is not authorized to order payment of a claim under a contract made in violation of [a purchasing statute], and the auditor is prohibited from paying such a claim.").

We next address approval and payment of the "debt" by the commissioners court and the county auditor. Section 115.021 of the Local Government Code specifically requires a commissioners court to "audit and settle all accounts against the county and [to] direct the payment of those accounts." TEX. LOC. GOV'T CODE ANN. § 115.021 (Vernon 2008). Under this provision, a commissioners court has a duty to "audit all claims against the county and to order paid those only which are found to be just and legal demands." *Padgett v. Young County*, 204 S.W. 1046, 1052 (Tex. Civ. App.—Fort Worth 1918, writ dism'd); *accord Navarro County v. Tullos*, 237 S.W. 982, 987–98 (Tex. Civ. App.—Dallas 1922, writ ref'd).

Additionally, under chapter 113 of the Local Government Code, a commissioners court may not direct the payment of a claim until it has been examined and approved by the county auditor. TEX. LOC. GOV'T CODE ANN. § 113.064(a) (Vernon 2008); *see also Crider v. Cox*, 960 S.W.2d 703, 706 (Tex. App.—Tyler 1997, writ denied) (stating that the county auditor's approval of a claim is a prerequisite to the commissioners court's approval; without the county auditor's approval, the commissioners court's approval of a claim is void). And "[t]he county auditor may not audit or

---

[4]This is true "so long as there has been no change in the law or in the facts as would cause the bargain to be valid and enforceable if made at the time of ratification." *TCA Bldg. Co. v. Nw. Res. Co.*, 922 S.W.2d 629, 634 (Tex. App.—Waco 1996, writ denied) (quoting 6A CORBIN ON CONTRACTS § 1532, at 806 (1962)). There has been no change in the relevant law and in the facts that we know of here that "would cause the bargain to be valid and enforceable" as of its ratification.

approve a claim unless the claim was incurred as provided by law." Tex. Loc. Gov't Code Ann. § 113.065 (Vernon 2008). "The language of these statutes is mandatory. They impose on the auditor the responsibility, before approving a claim, to determine whether it strictly complies with the law governing county finances." *Smith v. McCoy*, 533 S.W.2d 457, 459 (Tex. Civ. App.—Dallas 1976, writ dism'd) (addressing the statutory predecessors to Local Government Code sections 113.064–.065); *see also Crider* 960 S.W.2d at 706 ("A claim against the county may not be approved by the Auditor unless it was incurred in accordance with the law.") (citing Local Government Code section 113.065).[5]

In answer to your predecessor's question, if the indigent health care services invoices submitted in excess of the budgeted amount constitute "debt" prohibited by article XI, section 7, the Cameron County Auditor is prohibited from approving the claims and the Cameron County Commissioners Court is not authorized to direct their payment because they are not legal claims. *Cf.* Tex. Att'y Gen. Op. No. GA-0247 (2004) at 4–5 (determining that section 113.065 prohibits a county auditor from approving a claim under a contract awarded in violation of purchasing statute, and the claim may not be approved by the commissioners court or paid by the county); H-1237 (1978) at 1–2 (concluding that the commissioners court is not authorized to order payment of a claim under a contract made in violation of purchasing statute, and the auditor is prohibited from paying such a claim).[6] Again, our conclusion here is limited to the excess invoice amount your predecessor asked about.

---

[5]As indicated in part I of this opinion, the county is obligated by chapter 61 of the Health and Safety Code to provide the indigent health care prescribed by the statute. *See* Tex. Health & Safety Code Ann. §§ 61.001–.066 (Vernon 2001 & Supp. 2007).

[6]We were not asked about, and we do not consider any legal theories on which a party to the contracts at issue may seek relief in court.

## S U M M A R Y

Whether Cameron County contemplated when it entered into indigent health care services contracts that the entire pecuniary obligation thereunder would be paid from current general tax revenues for the 2006-2007 fiscal year or other funds then within the county's immediate control is a question of fact.

If, as suggested here, Cameron County did not contemplate when it entered into indigent health care services contracts that the entire pecuniary obligation thereunder would be paid from current general tax revenues for the 2006-2007 fiscal year or other funds then within the county's immediate control, such contracts created "debt" within the meaning of Texas Constitution article XI, section 7. And unless the county levied a tax to pay interest on the "debt" and provide a sinking fund of at least two percent to pay the principal, the contracts created "debt" prohibited by the constitutional provision. Under these circumstances, indigent health care services invoices submitted pursuant to the contracts in excess of the amount budgeted by the county for such purposes at issue here would constitute "debt" prohibited by article XI, section 7.

If the indigent health services invoices in excess of the amount budgeted by the county for such purposes constitute "debt" prohibited by article XI, section 7, the Cameron County Commissioners Court cannot ratify them; the Cameron County Auditor is prohibited from approving the claims; and the Cameron County Commissioners Court is not authorized to direct their payment.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee